**Jesse KETCHUM, M.D., Petitioner,**

**v.**

**Benjamin WARD, Commissioner of the Department of Correctional Services of the State of New York, et al., Respondents.**

**No. Civ–75–79.**

United States District Court,
W. D. New York.
March 20, 1975.

Roy Lucas, Washington, D.C. and Roy Carlisi, Buffalo, N.Y., for petitioner.

Michael G. Wolfgang, Asst. Atty. Gen., Buffalo, N.Y., for respondents Ward and Lefkowitz.

Judith Blake Manzella, Asst. Dist. Atty., Buffalo, N.Y., for respondent Cosgrave.

CURTIN, Chief Judge.

On February 28, 1975, this court filed an order reserving decision on the petitioner's application for bail. On March 11, 1975, the United States Court of Appeals for the Second Circuit, after considering petitioner's appeal from that order, remanded the case to this court so that findings could be made on petitioner's bail application.

In June of 1971, one of the petitioner's patients expired in his office following an abortion procedure. Subsequently, he was convicted in the Supreme Court of Erie County on October 26, 1973, by a jury which found him guilty of criminally negligent homicide in violation of New York Penal Law Sections 15.05 and 125.10.[1] The Appellate Division, Fourth Department, affirmed without opinion on June 27, 1974. People v.

---

1. N.Y. Penal Code § 15.05, at 21 (McKinney Supp.1973–74), provides in pertinent part:

    4. "Criminal negligence." A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

N.Y. Penal Code § 125.10, at 224 (McKinney 1967), provides:

    A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person.

Ketchum, 45 A.D.2d 820, 358 N.Y.S.2d 353 (4th Dept. 1974). On October 23, 1974, the New York Court of Appeals affirmed the Appellate Division in a memorandum opinion reported at 35 N.Y.2d 740, 361 N.Y.S.2d 911, 320 N.E.2d 645, which stated:

The order appealed from should be affirmed.

The record discloses examples of grievous misconduct by the prosecution in cross-examination and summation which we strongly condemn. However, since the overwhelming proof is all but conclusive of defendant's guilt, and the misconduct does not reflect a pattern throughout the trial, but rather reactions at certain times of stress, reversal is not warranted.

The defendant's petition for a writ of certiorari to the United States Supreme Court was denied on February 18, 1975. The next day, February 19, 1975, a petition for a writ of habeas corpus was filed in this court, together with an application for bail pending the determination of the petition. After considering the briefs, exhibits and oral argument of the parties addressed to the question of bail, the court filed an order deferring a ruling until such time as the petitioner surrendered to New York authorities.[2] The petitioner surrendered as previously scheduled on February 27, 1975.

By the order of this court dated February 28, 1975, a decision on the question of bail was again deferred until such time as briefs addressed to the court's jurisdiction and the merits of the petition were received. An expedited briefing schedule was agreed upon by all of the parties [3] and oral argument will take place immediately after filing. On February 28, in addition to the matter submitted regarding bail, I had read the briefs filed in the state court and the United States Supreme Court on the application for certiorari but not the lengthy record of the trial. I was concerned about the appropriateness of federal relief from the standpoint of exhaustion of the issues of statutory application and trial venue, 28 U.S.C. § 2254(b), and the substantiality of the prosecutorial misconduct averments in light of the recent Supreme Court decision in Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The appeal and remand, however, require that I reconsider my decision not to decide made February 28, 1975.

■ In a habeas corpus proceeding following a state court conviction, a federal court has discretionary authority to grant bail. Glynn v. Donnelly, 470 F.2d 95 (1st Cir. 1972). See also Aronson v. May, 85 S.Ct. 3, 13 L.Ed.2d 6 (1964); Levy v. Parker, 396 U.S. 1204, 90 S.Ct. 1, 24 L.Ed.2d 25 (1969); Farr v. Pitchess, 409 U.S. 1243, 93 S.Ct. 593, 34 L.Ed. 2d 655 (1973); Benson v. California, 328 F.2d 159 (9th Cir. 1964); United States ex rel. Napoli v. New York, 379 F.Supp. 603 (E.D.N.Y.1974); Bryan v. Wainwright, 377 F.Supp. 766 (M.D.Fla.1974).

The more difficult question is whether the circumstances of this case call for the exercise of that discretion at this time.

■ The respondent vigorously opposes the granting of bail, pointing out that the petitioner stands convicted of a serious crime and that his arguments have been considered and rejected by the appellate division, the court of appeals, and on the application for certiorari to the Supreme Court. This argument has had great force in the First Circuit as indicated by that court's decision in Glynn v. Donnelly, *supra*, wherein the court said:

Before, and during, trial, the accused enjoys a presumption of innocence,

---

2. Petitioner was enlarged on bail by Judge Matthew Jasen of the New York Court of Appeals pending determination of his petition for certiorari to the United States Supreme Court.

3. Petitioner was directed to file a memorandum on March 17, 1975; respondents to answer on March 31, 1975. Petitioner may reply on April 7, 1975.

and bail is normally granted. The presumption fades upon conviction, and can be of no significance after the defendant's appeal has been rejected. Correspondingly, the state acquires a substantial interest in executing its judgment. Quite apart from principles of comity, this combination of factors dictates a formidable barrier for those who seek interim release while they pursue their collateral remedies. . . . We would express it in these terms. Both in the district court, and on appeal, in the absence of exceptional circumstances—whatever that may include—the court will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, Benson v. California, ante, but a clear, and readily evident, case on the facts. Merely to find that there is a substantial question is far from enough. 470 F.2d at 98

The First Circuit was relying to a large extent on the language of Mr. Justice Douglas in Aronson v. May, *supra*. It was stated there that for enlargement on bail in a federal habeas corpus proceeding brought to collaterally attack a state court conviction, it was necessary for the court "to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice." 85 S.Ct. at 5. *See also* Benson v. California, *supra*. The petitioner argues that in more recent decisions by Mr. Justice Douglas, the *exceptional circumstances* requirement of the Aronson, Benson and Glynn cases, *supra*, has been deemphasized in relation to the *substantial questions* requirement. See Farr v. Pitchess, *supra*, and Levy v. Parker, *supra*. In reviewing the Farr and Levy cases, however, I find that Mr. Justice Douglas' discussion takes into consideration special circumstances and the interests of justice. Therefore, I conclude that exceptional circumstances must also be

shown and that the standards of the *Aronson, Benson* and *Glynn* cases are controlling. If it were otherwise, the district courts would be required to digest the entire record of the proceedings in the state courts and hazard an early guess on the outcome of the proceedings. With the increasing pressures of time in criminal cases and the expanding number and type of proceedings before the federal courts, this would be an impossible burden.

The issues raised by the petitioner are indeed substantial. The first argument advanced relates to the criminally negligent homicide statutes which formed the basis for his conviction. It is apparent that these statutes have not been heretofore applied to deaths related to abortions or, for that matter, to medical procedures at all. It is argued that Dr. Ketchum had no prior notice that his activities were criminal. The argument is fortified, according to the petitioner, by a careful reading of the indictment and the bill of particulars. The indictment in part read as follows:

THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuse JESSE KETCHUM of the following crime:

Criminally Negligent Homicide, in that he, the said JESSE KETCHUM, on or about the 16th day of June, 1971, in the County, with criminal negligence, caused the death of Margaret Louise Smith by his choice of a surgical procedure, to wit: a vaginal hysterotomy, under all the circumstances of this case and by failing to care for and provide for her proper medical care, after that procedure was utilized.

Particularly offensive, according to the petitioner, is the portion of the indictment which reads "under all the circumstances of this case." It is alleged that the defense could not know whether this language referred to the petitioner's background and training, the place where the procedure was performed, the

surgical technique used, or a host of other factors. In addition, petitioner alleges that a vaginal hysterotomy, as charged in the indictment, was not the surgical procedure that was used. Furthermore, the standards applicable to the performing of newly legalized abortions in New York State had not yet been established, making a deviation from those standards impossible. To support this argument the petitioner points to a report of the same Grand Jury which indicted him, which recommends promulgation of standards for the performance of abortions to the New York State Legislature.

Petitioner urges the court to find that the combined effect of these factors was a proceeding which "left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." Russell v. United States, 369 U.S. 749 at 768, 82 S.Ct. 1038 at 1049, 8 L.Ed.2d 240 (1962).

A second substantial ground advanced by the petitioner relates to instances of prosecutorial misconduct. It is alleged that the manner in which the petitioner's expert witness was cross-examined and the derogatory remarks directed at the petitioner during closing statements by the prosecution rendered the entire trial fundamentally unfair, violating the due process clause. *See* Donnelly v. DeChristoforo, *supra.*

Having determined that the questions presented are substantial, I now turn to an examination of the other circumstances presented. If those circumstances are unexceptional, then bail would not be warranted, in light of my earlier discussion of the applicable standards.

Dr. Ketchum's conviction carries an indeterminate sentence of up to three years. As of the date of this order he has served less than thirty days of that term. If the expedited briefing and argument schedule are met, it is unlikely that Dr. Ketchum will serve even a small fraction of his term prior to a reasoned and deliberate determination of the merits of his petition.

■ Certainly the fact that he is incarcerated in and of itself is not an exceptional circumstance. Virtually hundreds of petitions are submitted to the federal courts yearly, most of them pro se, on behalf of persons incarcerated.

The fact that Dr. Ketchum is a professional man is not a factor which, in fairness, should distinguish him from any other convicted felon. All prisoners, both state and federal, encounter hardship and heartache from the disruption of their lives and the separation from families they experience in an isolated institutional setting. The type of custody is not in issue, rather the fact of the custody itself.

■ The exceptional circumstance which petitioner places greatest reliance on is the allegedly bizarre nature of the conviction itself. However, this relates back once again to the substantiality of the questions raised. Petitioner has raised these same substantial questions before, as he must to invoke this court's jurisdiction. He has not prevailed at any level on these substantial questions. Furthermore, the New York Court of Appeals stated in its memorandum that "the overwhelming proof is all but conclusive of defendant's guilt." At this premature point in the proceedings, I cannot conclude that the petitioner has made a showing which would indicate an "exceptional" chance of success on the merits.

Therefore, the application for bail is in all respects denied.

So ordered.