## DONNELLY *v.* DeCHRISTOFORO

No. 72–1570.  Argued February 20, 1974—Decided May 13, 1974

REHNQUIST, J., delivered the opinion of the Court, in which
BURGER, C. J., and STEWART, WHITE, BLACKMUN, and POWELL, JJ.,
joined.  STEWART, J., filed a concurring opinion, in which WHITE, J.,

joined, *post,* p. 648. DOUGLAS, J., filed a dissenting opinion, in Part II of which BRENNAN and MARSHALL, JJ., joined, *post,* p. 648.

*David A. Mills,* Assistant Attorney General of Massachusetts, argued the cause for petitioner. With him on the brief were *Robert H. Quinn,* Attorney General, *John J. Irwin, Jr.,* and *Barbara A. H. Smith,* Assistant Attorneys General.

*Paul T. Smith* argued the cause for respondent. With him on the brief were *Harvey R. Peters* and *Jeffrey M. Smith.**

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent was tried before a jury in Massachusetts Superior Court and convicted of first-degree murder.[1] The jury recommended that the death penalty not be imposed, and respondent was sentenced to life imprisonment. He appealed to the Supreme Judicial Court of Massachusetts contending, *inter alia,* that certain of the prosecutor's remarks during closing argument deprived him of his constitutional right to a fair trial. The Supreme Judicial Court affirmed.[2] That court acknowledged that the prosecutor had made improper remarks, but determined that they were not so prejudicial as to require reversal.

Respondent then sought habeas corpus relief in the United States District Court for the District of Massa-

---

*Melvin B. Lewis* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae.*

[1] Respondent and his codefendants were also indicted for illegal possession of firearms, and respondent received a four- to five-year sentence on that charge. The conviction is in no way related to the issues before the Court in this case.

[2] *Commonwealth* v. *DeChristoforo,* —— Mass. ——, 277 N. E. 2d 100 (1971).

chusetts. The District Court denied relief, stating: "[T]he prosecutor's arguments were not so prejudicial as to deprive [DeChristoforo] of his constitutional right to a fair trial."[3] The Court of Appeals for the First Circuit reversed by a divided vote.[4] The majority held that the prosecutor's remarks deliberately conveyed the false impression that respondent had unsuccessfully sought to plead to a lesser charge and that this conduct was a denial of due process. We granted certiorari, 414 U. S. 974 (1973), to consider whether such remarks, in the context of the entire trial, were sufficiently prejudicial to violate respondent's due process rights. We hold they were not and so reverse.

## I

Respondent and two companions were indicted for the first-degree murder of Joseph Lanzi, a passenger in the car in which the defendants were riding. Police had stopped the car at approximately 4 a. m. on April 18, 1967, and had discovered Lanzi's dead body along with two firearms, one of which had been fired. A second gun, also recently fired, was found a short distance away. Respondent and one companion avoided apprehension at that time, but the third defendant was taken into custody. He later pleaded guilty to second-degree murder.

Respondent and the other defendant, Gagliardi, were finally captured and tried jointly. The prosecutor made little claim that respondent fired any shots but argued that he willingly assisted in the killing. Respondent, on the other hand, maintained that he was an innocent passenger. At the close of the evidence but before final argument, Gagliardi elected to plead guilty to a charge of second-degree murder. The court advised the jury that

---

[3] App. 231.
[4] 473 F 2d 1236 (1973).

Gagliardi had pleaded guilty and that respondent's trial would continue.[5] Respondent did not seek an instruction that the jury was to draw no inference from the plea, and no such instruction was given.

Respondent's claims of constitutional error focus on two remarks made by the prosecutor during the course of his rather lengthy closing argument to the jury. The first involved the expression of a personal opinion as to guilt,[6] perhaps offered to rebut a somewhat personalized argument by respondent's counsel. The majority of the Court of Appeals agreed with the Supreme Judicial Court of Massachusetts that this remark was improper, but declined to rest its holding of a violation of due process on that remark.[7] It turned to a second remark that it deemed "more serious."

The prosecutor's second challenged comment was directed at respondent's motives in standing trial: "They [the respondent and his counsel] said they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder."[8] Respondent's counsel objected immediately to the statement and later sought an instruction that the remark was improper and should

---

[5] The trial court stated:

"Mr. Foreman, madam and gentlemen of the jury. You will notice that the defendant Gagliardi is not in the dock. He has pleaded 'guilty,' and his case has been disposed of.

"We will, therefore, go forward with the trial of the case of Commonwealth vs DeChristoforo." App. 99.

[6] The challenged remark was: "I honestly and sincerely believe that there is no doubt in this case, none whatsoever." *Id.*, at 130.

[7] The Court of Appeals noted: "[A]t least the jury knows that the prosecutor is an advocate and it may be expected, to some degree, to discount such remarks as seller's talk." 473 F. 2d, at 1238.

[8] App. 129.

be disregarded.[9]   The court then gave the following instruction:

> "Closing arguments are not evidence for your consideration. . . .
>
> "Now in his closing, the District Attorney, I noted, made a statement: 'I don't know what they want you to do by way of a verdict. They said they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder.' There is no evidence of that whatsoever, of course, you are instructed to disregard that statement made by the District Attorney.
>
> "Consider the case as though no such statement was made." [10]

The majority of the Supreme Judicial Court of Massachusetts, though again not disputing that the remark was improper, held that it was not so prejudicial as to require a mistrial and further stated that the trial judge's instruction "was sufficient to safeguard the defendant's rights." [11]   Despite this decision and the District Court's denial of a writ of habeas corpus, the Court of Appeals found that the comment was potentially so misleading and prejudicial that it deprived respondent of a constitutionally fair trial.

---

[9] No instruction was sought at the time although the court apparently was willing to give one. The trial judge later told counsel: "[H]ad there been a motion made by you at that time to have me instruct the jury along the lines of eliminating that from their minds, or something of that nature, I certainly would have complied, because I did consider at the time the argument was beyond the grounds of complete propriety, but certainly far from being grounds for a mistrial." *Id.*, at 133.

[10] *Id.*, at 143–144.

[11] —— Mass., at ——, 277 N. E. 2d, at 105.

The Court of Appeals reasoned that the jury would be naturally curious about respondent's failure to plead guilty and that this curiosity would be heightened by Gagliardi's decision to plead guilty at the close of the evidence. In this context, the court thought, the prosecutor's comment that respondent hoped for conviction on a lesser offense would suggest to the jury that respondent had sought to plead guilty but had been refused. Since the prosecutor was in a position to know such facts, the jury may well have surmised that respondent had already admitted guilt in an attempt to secure reduced charges. This, said the Court of Appeals, is the inverse of, but a parallel to, intentional suppression of favorable evidence. The prosecutor had deliberately misled the jury, and even if the statement was made thoughtlessly, "in a first degree murder case there must be some duty on a prosecutor to be thoughtful." [12] Therefore, the District Court had erred in denying respondent's petition.

## II

The Court of Appeals in this case noted, as petitioner urged, that its review was "the narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court." [13] We regard this observation as important for not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba* v. *California,* 314 U. S. 219, 236 (1941). We stated only this Term in *Cupp* v. *Naughten,* 414 U. S. 141 (1973), when reviewing an instruction given in a state court:

"Before a federal court may overturn a conviction

---

[12] 473 F. 2d, at 1240.

[13] *Id.,* at 1238.

resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." [14]

This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Griffin* v. *California*, 380 U. S. 609 (1965).[15] When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process. We do not believe that examination of the entire proceedings in this case supports that contention.

Conflicting inferences have been drawn from the prosecutor's statement by the courts below. Although the Court of Appeals stated flatly that "the prosecuting attorney turned Gagliardi's plea into a telling stroke against [DeChristoforo]" [16] by implying respondent had

---

[14] 414 U. S., at 146.

[15] Respondent does suggest that the prosecutor's statements may have deprived him of the right to confrontation. See *Pointer* v. *Texas*, 380 U. S. 400 (1965). But this argument is without merit, for the prosecutor here simply stated his own opinions and introduced no statements made by persons unavailable for questioning at trial.

[16] 473 F. 2d, at 1239.

offered to plead guilty as well, the dissent found the inference to be "far less obvious." [17]   The Supreme Judicial Court of Massachusetts stated that it considered the same argument illogical:

> "It is not logical to conclude that the jury would accept any implied argument of the prosecutor that, because one of the men whom the defendant blamed for the murder had pleaded guilty, the defendant was any less firm in his assertion that he himself was not guilty of any crime whatsoever." [18]

Thus it is by no means clear that the jury did engage in the hypothetical analysis suggested by the majority of the Court of Appeals, or even probable that it would seize such a comment out of context and attach this particular meaning to it.   Five Justices of the Supreme Judicial Court of Massachusetts and at least one federal judge have all confessed difficulty in making this speculative connection.

In addition, the trial court took special pains to correct any impression that the jury could consider the prosecutor's statements as evidence in the case.   The prosecutor, as is customary, had previously told the jury that his argument was not evidence,[19] and the trial judge specifically re-emphasized that point.   Then the judge directed the jury's attention to the remark particularly challenged here, declared it to be unsupported, and admonished the jury to ignore it.[20]   Although some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment in this case is hardly of such character.

---

[17] *Id.*, at 1241 (Campbell, J., dissenting).

[18] App. 157.

[19] *Id.*, at 119.

[20] See n. 10, *supra.*

In *Cupp* v. *Naughten, supra,* the respondent had challenged his conviction on the ground that a "presumption of truthfulness" instruction, given by the state trial court, had deprived him of the presumption of innocence and had shifted the State's burden of proof to himself. Holding that the instruction, although perhaps not advisable, did not violate due process, we stated:

> "In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd* v. *United States,* 271 U. S. 104, 107 (1926). While this does not mean that an instruction by itself may never rise to the level of constitutional error, see *Cool* v. *United States,* 409 U. S. 100 (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." [21]

Similarly, the prosecutor's remark here, admittedly an ambiguous one, was but one moment in an extended trial and was followed by specific disapproving instructions. Although the process of constitutional line drawing in this regard is necessarily imprecise, we simply do not believe that this incident made respondent's trial so fundamentally unfair as to deny him due process.

---

[21] 414 U. S., at 146–147.

## III

We do not find the cases cited by the Court of Appeals to require a different result. In *Miller* v. *Pate*, 386 U. S. 1 (1967), the principal case relied upon, this Court held that a state prisoner was entitled to federal habeas relief upon a showing that a pair of stained undershorts, allegedly belonging to the prisoner and repeatedly described by the State during trial as stained with blood, was in fact stained with paint. In the course of its opinion, this Court said:

> "It was further established that counsel for the prosecution had known at the time of the trial that the shorts were stained with paint. . . .
>
> ". . . The record of the petitioner's trial reflects the prosecution's consistent and repeated misrepresentation that People's Exhibit 3 was, indeed, 'a garment heavily stained with blood.' " *Id.*, at 6.

A long series of decisions in this Court,[22] of course, had established the proposition that the "Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence." *Id.*, at 7. The Court in *Miller* found those cases controlling.

We countenance no retreat from that proposition in observing that it falls far short of embracing the prosecutor's remark in this case. The "consistent and repeated misrepresentation" of a dramatic exhibit in evidence may profoundly impress a jury and may have a significant impact on the jury's deliberations. Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions. Such arguments, like all closing arguments of counsel, are seldom carefully constructed

---

[22] See, *e. g., Mooney* v. *Holohan*, 294 U. S. 103 (1935); *Napue* v. *Illinois*, 360 U. S. 264 (1959).

*in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

The Court of Appeals' reliance on *Brady* v. *Maryland,* 373 U. S. 83 (1963), is likewise misplaced. In *Brady,* the prosecutor had withheld evidence, a statement by the petitioner's codefendant, which was directly relevant to the extent of the petitioner's involvement in the crime. Since the petitioner had testified that his codefendant had done the actual shooting and since the petitioner's counsel was not contesting guilt but merely seeking to avoid the death penalty, evidence of the degree of the petitioner's participation was highly significant to the primary jury issue. As in *Miller,* manipulation of the evidence by the prosecution was likely to have an important effect on the jury's determination. But here there was neither the introduction of specific misleading evidence important to the prosecution's case in chief nor the nondisclosure of specific evidence valuable to the accused's defense. There were instead a few brief sentences in the prosecutor's long and expectably hortatory closing argument which might or might not suggest to a jury that the respondent had unsuccessfully sought to bargain for a lesser charge. We find nothing in *Brady* to suggest that due process is so easily denied.

The result reached by the Court of Appeals in this case leaves virtually meaningless the distinction between ordinary trial error of a prosecutor and that sort of egregious misconduct held in *Miller* and *Brady, supra,* to

amount to a denial of constitutional due process.[23] Since we believe that distinction should continue to be observed, we reverse the judgment of the Court of Appeals.

It is so ordered.

MR. JUSTICE STEWART, with whom MR. JUSTICE WHITE joins, concurring.

I agree with my Brother DOUGLAS that, when no new principle of law is presented, we should generally leave undisturbed the decision of a court of appeals that upon the particular facts of any case habeas corpus relief should be granted—or denied. For this reason I think it was a mistake to grant a writ of certiorari in this case, and I would now dismiss the writ as improvidently granted.

We are bound here, however, by the "rule of four." That rule ordains that the votes of four Justices are enough to grant certiorari and bring a case before the Court for decision on the merits. If, as many as four Justices remain so minded after oral argument, due adherence to that rule requires me to address the merits of a case, however strongly I may feel that it does not belong in this Court. See *Ferguson* v. *Moore-McCormack Lines,* 352 U. S. 521, 559 (separate opinion of Harlan, J.).

Upon this premise, I join the Court's opinion.

MR. JUSTICE DOUGLAS, dissenting.

The function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as pos-

---

[23] We do not, by this decision, in any way condone prosecutorial misconduct, and we believe that trial courts, by admonition and instruction, and appellate courts, by proper exercise of their supervisory power, will continue to discourage it. We only say that, in the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.

sible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial. As stated by the Court in *Berger* v. *United States,* 295 U. S. 78, 88:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

We have here a state case, not a federal one; and the prosecutor is a state official. But we deal with an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment by which the States are bound. *Chambers* v. *Mississippi,* 410 U. S. 284; *Sheppard* v. *Maxwell,* 384 U. S. 333; *Turner* v. *Louisiana,* 379 U. S. 466; *Irvin* v. *Dowd,* 366 U. S. 717.

In this case respondent was charged with first-degree murder and was convicted in the state court by a jury. At no time did he seek to plead guilty to a lesser offense. It is stipulated:

> "[A]t no time did defendant seek to plead guilty to any offense; at no time did the Commonwealth

seek to solicit or offer to accept a plea; and at all times defendant insisted upon a trial."

A codefendant pleaded guilty to second-degree murder and the jury was advised of the fact.

As to the guilt of respondent the prosecutor told the jury: "I honestly and sincerely believe that there is no doubt in this case, none whatsoever."

And he went on to say: "I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder."

These statements in the setting of the case and in light of the fact that the jury knew the codefendant had pleaded guilty to second-degree murder, are a subtle equivalent of a statement by the prosecutor that respondent sought a lesser penalty. Counsel for respondent immediately objected but the court at the time did not admonish the prosecutor or tell the jury to disregard the statement, though it did cover the matter later in its general instructions.

I

As a matter of federal law the introduction of a withdrawn plea of guilty is not admissible evidence, *Kercheval* v. *United States,* 274 U. S. 220. As a matter of procedural due process the Confrontation Clause of the Sixth Amendment, applicable to the States by reason of the Fourteenth Amendment, *Pointer* v. *Texas,* 380 U. S. 400, would bar a person from testifying that the defendant had sought a guilty plea unless the right of cross-examination of the witness was afforded, *id.,* at 406–408. That requirement of procedural due process should be sedulously enforced (save for the recognized exceptions of dying declarations and the like, *id.,* at 407) lest the theory that the end justifies the means gains further footholds here. The prosecutor is not a witness; and he should not be permitted to add to the record either by subtle

or gross improprieties. Those who have experienced the full thrust of the power of government when leveled against them know that the only protection the citizen has is in the requirement for a fair trial. The assurance of the Court that we make no retreat from constitutional government by today's decision has therefore a hollow ring.

Activist judges have brought federal habeas corpus into disrepute at the present time. It is guaranteed by the Constitution. It is a built-in restraint on judges—both state and federal; and it is also a restraint on prosecutors who are officers of the court. Our activist tendencies should promote not law and order, but *constitutional* law and order. Judges, too, can be tyrants and often have been. Prosecutors are often eager to take almost any shortcut to win, yet as I have said they represent not an ordinary party but We the People. As I have noted, their duty is as much "to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one," *Berger* v. *United States, supra,* at 88.

It is, I submit, quite "improper" for a prosecutor to insinuate to the jury the existence of evidence not in the record and which could not be introduced without the privilege of cross-examination.

## II

The Supreme Judicial Court of Massachusetts had difficulty with this case when it came before it on direct appeal, two Justices, which included the Chief Justice, dissenting,* *Commonwealth* v. *DeChristoforo,* ——

---

*Chief Justice Tauro said in dissent:

"The prosecutor's argument in the instant case permitted or perhaps even suggested an inference that the defendant had conceded his guilt and was merely hoping for something a little less than a verdict of murder in the first degree. This diminished his

Mass. ⸺, 277 N. E. 2d 100. The Court of Appeals was also divided, 473 F. 2d 1236. Our federal district courts and courts of appeals are much closer to law administration in the respective States than are we in Washington, D. C. They are responsible federal judges who know the Federal Constitution as well as we do. Their error in issuing the Great Writ—or in refusing to do so—would in my judgment have to be egregious for us to grant a petition for certiorari. When a court of appeals honors the Constitution by granting the Great Writ or in its solemn judgment denies it, we should let the matter rest there, save for manifest error.

I would affirm the judgment below.

Mr. Justice Brennan and Mr. Justice Marshall would affirm the judgment below for the reasons stated in Part II of the dissent of Mr. Justice Douglas.

---

chance for a fair trial to a far greater degree than would have the publication in a newspaper of his criminal background. Unlike a newspaper, the prosecutor ostensibly speaks with the authority of his office. The prosecutor's 'personal status and his role as a spokesman for the government tend[ed] to give to what he . . . [said] the ring of authenticity . . . tend[ing] to impart an implicit stamp of believability.' Hall v. United States, 419 F. 2d 582, 583–584 (5th Cir.). The prosecutor's remarks probably called for a mistrial. In any event the judge's failure to instruct the jury adequately and with sufficient force to eliminate the serious prejudice to the defendant constitutes fatal error. Moreover, the judge's routine final instructions to the jury were far from sufficient to correct the error. By then the defendant's position had so deteriorated that his chances for a fair deliberation of his fate by the jury were virtually eliminated." ⸺ Mass., at ⸺, 277 N. E. 2d, at 112.