959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mark Paul HENDERSON, Plaintiff-Petitioner,
v.
STATE of Washington, Defendant-Respondent.
 No. 91-35483.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 6, 1992.*
Decided April 10, 1992.
 
 Before JAMES R. BROWNING, EUGENE A. WRIGHT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Henderson filed a habeas corpus petition to challenge his conviction for second degree murder of his girlfriend's 23-month-old-daughter, Kendall. He contends that the admission of testimony about his previous beating of the child violated due process. He also contends that his trial was tainted by juror, police and prosecutorial misconduct and that his counsel was ineffective. The district court granted summary judgment to the state, finding the petition meritless. We affirm.
 
 
 3
 * At his second trial, two of Henderson's Boeing co-workers testified that they had a conversation with him about eight months before Kendall's death. Henderson told them that he had struck Kendall on the head the night before because she would not stop crying.
 
 
 4
 The state court of appeals determined that admission of the testimony was erroneous, but that the error was harmless. We agree for the reasons stated by the state court.
 
 
 5
 At trial, the defense theorized that Kendall was injured about noon at day care when she was hit on the head by a swing. Henderson testified that when he picked up the child, her eyes were glassy, and she was feverish. Later that evening, Henderson said that he found Kendall having a seizure in the bathtub.
 
 
 6
 Henderson's theory is supported by only one witness, the four-year-old son of the day care provider. He remembered that Kendall had been hit in the back by the swingset at some time in the past. He could not say whether the injury occurred on the day Kendall lapsed into a coma. Both women who looked after Kendall on that day testified that her behavior was not unusual.
 
 
 7
 The testimony of the paramedics and doctors who saw Kendall before she died undermines the defense theory. The paramedics, who arrived at the scene moments after an emergency call, testified that Kendall was totally dry and wearing underpants. She was also cool to the touch, suggestive of a brain injury, not fever as Henderson reported when he called 911.
 
 
 8
 Most of the doctors who testified believed that Kendall died from a severe blow to the head administered late in the day. They agreed that had she been injured earlier in the day, she would have exhibited symptoms such as severe headache, vomiting, lethargy and difficulty in walking.
 
 
 9
 The admission of the prior injury evidence was harmless error.
 
 
 10
 Henderson complains about the court's instruction to the jury that it was to consider the prior injury evidence only to determine whether it "tends to prove lack of accident or mistake." Such an instruction was approved in Estelle v. McGuire, 112 S.Ct. 475, 479 (1991). It was not error to give it here.
 
 II
 
 11
 Henderson argues that the police failure to preserve evidence violated his right to due process. Failure to preserve potentially exculpatory evidence does not constitute denial of due process "unless a criminal defendant can show bad faith on the part of police." Arizona v. Youngblood, 488 U.S. 51, 58 (1988).
 
 
 12
 Because Henderson did not allege or show that the police acted in bad faith and because the exculpatory value of the evidence is not apparent, the claim lacks merit.
 
 
 13
 Henderson contends that he was entitled to an evidentiary hearing. Because he did not allege bad faith by the police, he is not entitled to an evidentiary hearing to determine how the missing items were lost or destroyed.
 
 III
 
 14
 Henderson contends his right to due process was violated when the court failed to grant a mistrial after learning that one or more jurors saw a note saying, "Guilty" and that jurors could have seen another note saying, "Baby Killer Henderson".
 
 
 15
 A defendant is entitled to a new trial when the jury obtains or uses extrinsic evidence only if there is a reasonable possibility that the material could have affected the verdict. Dickson v. Sullivan, 849 F.2d 403 (9th Cir.1988).
 
 
 16
 Because the record contains no support for Henderson's claim that jurors saw the "Baby Killer" words, there is no reasonable possibility that the note affected the verdict. Dickson, 849 F.2d at 405. Even though one or two jurors may have seen the "guilty" note, it does not qualify as extrinsic evidence because it contained no factual information about the defendant.
 
 IV
 
 17
 Henderson next contends that he was entitled to a mistrial because one juror allegedly spoke to a state witness during the trial. The court held a hearing to investigate and found that the misconduct did not occur. This is a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Marshall v. Lonberger, 459 U.S. 411, 434 (1982). Because the court found that the alleged incident did not occur, we reject this claim.
 
 V
 
 18
 Henderson contends that his Sixth Amendment right to counsel was violated when police officers visited him in jail to examine his hands.
 
 
 19
 The right to counsel did not attach to the examination of Henderson's hands because the examination did not reduce the trial to a mere formality and because assistance of counsel would have done nothing to prevent potential prejudice to his rights. United States v. Wade, 388 U.S. 218, 226-27 (1967).
 
 
 20
 Henderson next contends that the deputy prosecutor made improper comments during closing argument. The comments arose from witness Reed's testimony. In closing, the prosecutor repeated Reed's statement that Henderson was "sick" and should seek help. He also said that "perhaps, as John Reed pointed out, he's sick and needs professional help." This statement merely reiterated a witness' testimony and was not an expression of personal opinion. Even if it was, it did not so infect the trial with unfairness that Henderson was denied due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).
 
 VI
 
 21
 Henderson argues that he was denied effective assistance of counsel because his attorney failed to: object to admission of prior injury evidence; timely move to dismiss because evidence was lost; object to cross-examination of Henderson regarding drug use; and raise on direct appeal the issues of lost evidence, jury tampering and jury misconduct. This claim is meritless.
 
 
 22
 The appropriate standard for judging this claim is given in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, a habeas petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. Id. at 687. In reviewing alleged deficiencies of representation, "a court must indulge the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In light of this standard and after reviewing the record, we conclude that counsel's performance was vigorous, not deficient.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3