967 F.2d 588
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Candace Lee MACDONALD, Petitioner-Appellant,
v.
Daniel MCCARTHY, Director, Respondent-Appellee.
 No. 88-1547.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 10, 1992.*
Decided June 16, 1992.
 
 Before FLETCHER, LEAVY and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Candace Lee MacDonald, a California state prisoner, appeals pro se the district court's denial of her 28 U.S.C. § 2254 habeas corpus petition.[1] MacDonald was convicted following a jury trial of one count of first degree murder in violation of California Penal Code § 187 and two counts of burglary in violation of California Penal Code § 459, and was sentenced to a term of imprisonment of twenty-eight years to life. MacDonald contends that public statements made by the prosecutor during her trial denied her a fair trial. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253, and we affirm.
 
 
 3
 * Background
 
 
 4
 On November 10, 1980, MacDonald and Michael English broke into the home of Solon Dunton, beat him, and smothered him to death.
 
 
 5
 MacDonald's trial began in May 1982. On June 1, 1982, the eighteenth day of the trial, the trial was adjourned until June 7 because the prosecution's final rebuttal witness was unavailable. The trial court reminded the jurors that they should not (1) discuss the case with anyone, (2) go to the scene of the events, or (3) "read the newspapers or observe TV or listen to the radio about any of the things you may [have] hear[d] in court."
 
 
 6
 On June 2, 1982, Romero Moench, the deputy district attorney prosecuting MacDonald's case, resigned from the district attorney's office effective at the end of MacDonald's trial. In his letter of resignation, Moench accused Bernard DePaoli, the district attorney of Humboldt County, of unethical conduct in not investigating a possible defense of self-defense in an unrelated murder case the district attorney's office was prosecuting. He also alleged improprieties in a plea bargain in a drunk driving case and in DePaoli's reporting of statistics, and urged DePaoli, who was a candidate for reelection on June 8, 1982, to resign. On June 3, 1982, DePaoli fired Moench, alleging that he had suffered a mental breakdown.
 
 
 7
 These events were reported in the local media. A June 3, 1982 newspaper account of the events included the following information, which MacDonald asserts is relevant to whether the publicity denied her a fair trial.
 
 
 8
 Humboldt County District Attorney Bernie DePaoli's right-hand man resigned Wednesday, saying he is "not going to work in an office where I have to be ashamed of what we're doing."
 
 
 9
 DePaoli, however, speculated that the resignation of Assistant District Attorney Rick Moench was either the result of an "emotional breakdown" or a response to a letter of reprimand DePaoli wrote him March 1.
 
 
 10
 Moench said he resigned Wednesday morning, effective at the end of Candace Lee MacDonald's murder trial, which he is currently prosecuting. Whether he will remain on that case, however, was still uncertain late Wednesday morning.
 
 
 11
 "It's not something I undertook lightly," Moench said.
 
 
 12
 His resignation was "a matter of conscience," he said, and he was very critical of DePaoli, saying, "I don't trust him."
 
 
 13
 [Account of DePaoli's alleged improprieties followed.]
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 [DePaoli] alleged that Moench's resignation was "politically motivated."
 
 
 17
 Moench denied that, saying, "I'm making the strongest statement I can make. I'm voting with my feet and with my paycheck."
 
 
 18
 He claimed his resignation was not related to the upcoming election, adding that he is now out of a job, has a family to support, and has no job prospects because he specializes in prosecuting criminal cases.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 DePaoli said Moench "can probably not ethically continue" prosecuting the MacDonald case.
 
 
 22
 "It is solely my decision" whether Moench continues on the case, he said, adding that he will "more than likely" be pulled off the case.
 
 
 23
 Presiding Humboldt County Superior Court Judge John E. Buffington said he was not sure how the MacDonald case would be handled.
 
 
 24
 Moench said he anticipated such a dilemma, and, he added, "I'd be more than happy to do it gratis."
 
 
 25
 An article published on June 4, 1982 added that "[i]f Moench is removed from the case, a mistrial could occur. Given the amount of publicity the trial has already received, the trial would probably take place in another county at great expense."
 
 
 26
 When the trial court reconvened on June 7, 1982, it denied DePaoli's motion to substitute another deputy for Moench. The court also continued the trial to June 17, 1982, again admonishing the jurors not to read or talk about the case.
 
 
 27
 When the court reconvened on June 17, 1982, it conducted a voir dire of the jurors to determine whether they had been prejudiced by the publicity concerning the Moench-DePaoli feud. All of the jurors had been exposed to the publicity, from either the media, family, or friends. The jurors unanimously asserted that they could be fair and impartial despite the publicity. The trial court subsequently denied MacDonald's motion for a mistrial.
 
 II
 Merits
 
 28
 In assessing charges of improper statements by a prosecutor, we examine "the entire proceeding[s]" to determine whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Similarly, in determining whether publicity denies a defendant a fair trial, "the reviewing court must make an independent review of the record to determine if there was such a degree of prejudice against the petitioner that a fair trial was impossible." Harris v. Pulley, 885 F.2d 1354, 1360 (9th Cir.1989) (quotation omitted), cert. denied, 493 U.S. 1051 (1990). "[State court d]eterminations of juror bias are factual determinations to which the presumption of correctness under 28 U.S.C. § 2254(d) applies, although the constitutional standard of juror impartiality is question of law." Id. at 1361 (quotation omitted); see also Patton v. Yount, 467 U.S. 1025, 1031 (1984) (trial court's findings on juror bias overturned only for "manifest error").
 
 
 29
 Publicity, either before or during a trial, can prejudice a jury and violate a defendant's sixth amendment right to be tried by a "panel of impartial, indifferent jurors." Irvin v. Dowd, 366 U.S. 717, 723 (1961) (quotation omitted). To establish that publicity violated the defendant's right to a fair trial, courts examine the totality of the circumstances. Murphy v. Florida, 421 U.S. 794, 799 (1975). The defendant must show that the publicity either (1) caused pervasive hostility within the community such that prejudice is presumed or (2) actually prejudiced jurors such that they could not impartially judge the defendant's guilt. Harris, 885 F.2d at 1361, 1363-64.
 
 
 30
 MacDonald has not shown that "the community where [her] trial was held was saturated with prejudicial and inflammatory media publicity about the crime" such that prejudice should be presumed. See Harris, 885 F.2d at 1361; see also Irvin, 366 U.S. at 727 ("pattern of deep and bitter prejudice [must be] shown throughout the community"); Murphy, 421 U.S. at 799 (prejudice presumed in "a circus atmosphere ... entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob").
 
 
 31
 Moreover, MacDonald has not shown that the publicity actually prejudiced the jurors. The constitutional requirement of impartiality does not limit jury membership to persons completely ignorant of the case. Irvin, 366 U.S. at 722. Instead, the relevant inquiry is "whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant." Patton, 467 U.S. at 1035; accord Harris, 885 F.2d at 1363-64. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented at trial." Irvin, 366 U.S. at 723; accord Harris, 885 F.2d at 1363.
 
 
 32
 Here, all of the jurors had been exposed directly to publicity or were aware of it. All, however, asserted that they believed the publicity had nothing to with the MacDonald case and that they could be fair and impartial despite their exposure to the publicity. Accordingly, MacDonald does not demonstrate actual prejudice from the jurors' responses. See Murphy, 421 U.S. at 801-02; cf. Patton, 467 U.S. at 1029-30, 1035 (no actual prejudice from pretrial publicity when 161 of venire of 163 heard about the case; 77% dismissed for cause because they admitted they would carry an opinion into the jury box, and 8 of 14 jurors and alternates admitted that at some time they had formed an opinion as to defendant's guilt).
 
 
 33
 MacDonald asserts, however, that Moench's comments suggested that he was a person with integrity who would never prosecute a person whom he believed to be innocent. These remarks, she argues, coupled with his public offer to try the case "gratis," amounted to an impermissible "vouching" that Moench believed her to be guilty. We disagree. Although a prosecutor may not express his personal opinion about a defendant's guilt, see United States v. Molina, 934 F.2d 1440, 1444-45 (9th Cir.1991), Moench's statements did not "so infect[ ] the trial with unfairness" that MacDonald was denied a fair trial, see Donnelly, 416 U.S. at 643.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 MacDonald was represented by counsel in the district court but is proceeding pro se on appeal