**Frank RUIZ, Petitioner,**

v.

**Dave McKENZIE, et al., Respondents.**

**No. 96–3335–DES.**

United States District Court,
D. Kansas.

Aug. 5, 1999.

Frank Ruiz, El Dorado, El Dorado Correctional Facility, El Dorado, KS, petitioner pro se.

Jared S. Maag, Office of Attorney General, Topeka, KS, for respondents.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate in the custody of the Kansas Department of Corrections, challenges his conviction of one count of aggravated battery, claiming the district court erred in failing to appoint an interpreter, violated his right to equal protection during jury selection, and denied him due process by permitting prosecutorial misconduct during closing argument.

**Procedural and factual background**

On July 15, 1991, Bryant Seward of Kansas City, Kansas, returned home in the limousine he drove. As Seward stood under the open hood of the vehicle, a man approached him and fired at him with a handgun, causing multiple wounds.

Police responded immediately and obtained a description of the shooter from Seward and his girlfriend. Two Kansas City Police officers located petitioner walking on Interstate 635. Petitioner and the two officers exchanged gunfire, and one officer was struck several times. Petitioner fled, and the second officer pursued him. Petitioner was eventually found lying nude and wounded on the porch of a residence. Ballistics evidence revealed that the shots fired at Seward and at the police officers were from the same firearm.

At trial, petitioner was convicted of one count of aggravated batter for his attack on Seward. The jury was unable to reach a verdict on one count of aggravated battery of a law enforcement officer, and petitioner was acquitted of one count of aggravated assault of a law enforcement officer. Petitioner later entered a guilty plea to one count of attempted aggravated batter of a law enforcement officer.

Petitioner's conviction was affirmed on direct appeal by the Kansas Court of Appeals. Other relevant facts are included in the discussion as necessary.

### Discussion

Petitioner first claims the trial court erred in failing to appoint an interpreter. The rulings of a state court concerning the appointment of an interpreter do not rise to constitutional dimension where the petitioner understood the proceedings. *Soap v. Carter*, 632 F.2d 872, 875 (10th Cir.1980), *cert. denied*, 451 U.S. 939, 101 S.Ct. 2021, 68 L.Ed.2d 327 (1981).

The Kansas Court of Appeals rejected this claim, finding that the trial record demonstrated petitioner could speak and understand English. The appellate court specifically noted petitioner gave appropriate responses to questions by both prosecution and defense counsel, petitioner acknowledged during his testimony that he could communicate in both Spanish and English, and that he made at least three outbursts during the testimony of other

witnesses which showed he understood their statements.

This court finds no reason to disturb the decision of the Kansas Court of Appeals. It is apparent from the record that petitioner, although not a native speaker of English, was able to understand the proceedings and to participate in his defense. The failure to appoint an interpreter under these circumstances did not deny petitioner any constitutionally-protected interest.

**Challenge to prospective jurors**

■ Petitioner next asserts that peremptory challenges by the prosecution to two prospective African–American jurors violated his constitutional rights. By its decision in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court banned the use of peremptory challenges by the government to remove prospective jurors based upon their race.

Under *Batson,* the defendant has the burden to establish a prima facie showing of purposeful discrimination by establishing that he is a member of a cognizable racial group, that the prosecution has used peremptory challenges to remove members of that group from the venire, and that "[t]hese facts and any other relevant circumstances raise an inference that the prosecutor used this practice [peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. 1712.

Once the defendant makes such a showing, the burden shifts to the State to present a race-neutral explanation for the challenge. The trial court then determines whether the defendant has established purposeful discrimination.

However, where the prosecution offers a race-neutral explanation of the use of peremptory challenges, whether the defendant has established a prima facie case of discrimination is moot. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *United States v. Johnson,* 941 F.2d 1102 (10th Cir.1991).

■ In this analysis, the factual findings of the state court are presumed to be correct unless this court determines they are not fairly supported by the record. *See Sena v. New Mexico State Prison,* 109 F.3d 652, 653 (10th Cir.1997). *See also Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712 (courts to give deferential review to state court finding no discrimination occurred).

Here, defense counsel challenged the prosecution's use of peremptory challenges in the following colloquy:

Defense counsel: Judge, at this point in time the defendant would lodge a Batson challenge to State's strikes 4 and 6. That's jurors numbers 10 and 5. Both men are black males and based on the voir dire there's nothing to differentiate them from any of the other prospective jurors other than race.

The court: You're doing this to 4 and 6?

Defense counsel: The fourth and sixth strikes.

The court: Your statement is because they're both black?

Defense counsel: Yes. Based on the voir dire, there's nothing to differentiate them from the other jurors other than their race.

The court: I'm not at this point having any problem with ruling, but the last case that came down it would seem a good thing for the State to give their reasons why they struck these two people.[1]

The prosecutor responded to this request as follows:

Prosecutor: Judge, as to juror number 10, Douglas Humphrey, he stated his

1. Despite repeated contacts with the clerk of the District Court of Wyandotte County, this court has not received a full transcript of the trial proceedings. Quoted portions of the proceedings in this Memorandum and Order are taken from the unpublished order of the Kansas Court of Appeals, *State v. Ruiz,* No. 70,690 (April 7, 1995).

stepfather was charged with robbery when he was 8 years old and his uncle about two years ago was charged with several crimes, murder, kidnapping and something to do with cocaine. He said he can be fair and impartial and thought he was treated fairly. I think I had good reason to get rid of him.

"I got rid of two white jurors, 30, her husband had an assault problem, and 27, her brother had a vehicular manslaughter problem, and 28, his brother was a victim and a suspect. He was not sure of what he was convicted of, if anything. Those white persons were treated the same.

"As far as number 5, he didn't say anything to differentiate him. As we speak here there are two groups of jurors you can hear above everybody else. One group is behind the rail and that's the two males, Mr. Rees and Mr. Stack. I can hear them clearly with each other socializing rather strongly. Juror number 5 with 10, they were talking about some mutual acquaintances. They weren't brought up when we asked if they knew each other. From their talk up there, and I can hear them right now as we speak, that they have mutual acquaintances. They brought in juror number 11—he's black. The three of them were pretty much oblivious to the other jurors. There's this circle of three people. I hate putting any cliques on the jury. I struck two of the three. Number 10 was gone because of the convictions and number 5 and 11—5 seemed the more dominant of the two. I decided to leave number 11.

"There are two other black females, number 9, Miss Larry, and number 4, Miss Massenberg. They didn't participate in the conversations. That's why I struck number 10 and 5.

"From what records I kept of who knew who, one of the pair that knew each other in each case has been struck so I don't have anybody who knows each other on the panel. That's in line with my thinking of breaking up cliques, somebody who knows someone else. Those are the reasons—I think that would pass any Batson test.

"I would like to indicate to the Court—the Batson requirement is a three-pronged test. I don't believe the defendant has met the third prong—showing a systematic elimination of minorities of the jury. This makeup of the jury will be about 50/50. It's going to be about 50/50. Six blacks and six whites or something like that. There's quite a number of minorities left on the panel.

"It's my argument that Mr. Long hasn't shown an intent by the prosecution to systematically eliminate any minorities of the jury and any elimination I did was certainly for non-race related reasons."

The trial court found no error in these peremptory strikes, and the Kansas Court of Appeals likewise concluded all jurors were questioned in the same manner, that petitioner failed to demonstrate any pattern of striking African–American jurors, and that the prosecution provided a race-neutral explanation for the removal of the two prospective jurors. This court agrees. The decision of the district court is supported by the transcripts of the voir dire proceedings provided to the court, and the explanation offered by the prosecution is race-neutral and reasonable. Petitioner is not entitled to relief on this claim.

**Prosecutorial misconduct during closing argument**

█ Petitioner's final challenge to his conviction alleges he was denied a fair trial by the prosecutor's closing argument. The specific remark challenged reads:

"The other possibility is that you have a guy who comes in from out of town and he says he's from Houston. He's wearing camouflage and has four magazines with him which is a total of twenty some shots and a .45 caliber handgun. Maybe he's a hit man sent from Houston. That tells you why he wouldn't surrender to the police. That's a plausible explana-

tion. Only Frank Ruiz can answer that for sure."

■■■ Improper comment by a prosecutor will not require habeas corpus relief unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The evaluation of such a claim requires evaluation of the entire record. *Id.*

The Kansas Court of Appeals rejected this claim due to petitioner's failure to lodge a contemporaneous objection and concluded the statement in question was insufficient to prejudice the jury unfairly against petitioner and deny a fair trial.

Having considered the summary of the evidence offered at trial, and the remarks made by the prosecution, this court agrees petitioner is not entitled to relief. It is evident there was considerable eyewitness testimony to petitioner's acts and that the questionable remark made by the prosecutor was a brief comment on a possible interpretation of the evidence before the jury. This court is mindful of the Supreme Court's observation that closing statements by counsel "are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear." *Id.* at 646–47, 94 S.Ct. 1868. In light of the record, the court finds this remark was unfortunate but not unconstitutional.

## Conclusion

For the foregoing reasons, the court concludes petitioner is not entitled to habeas corpus relief.

IT IS THEREFORE ORDERED the petition for habeas corpus is dismissed and all relief is denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED.**