**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0043n.06
Filed: January 13, 2005

No. 04-1442

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **MARTINEZ WADE,** | ) | |
| | ) | |
| **Petitioner-Appellee** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **HAROLD WHITE,** | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| **Respondents-Appellant** | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, GIBBONS and ROGERS, Circuit Judges

   **MERRITT, Circuit Judge.**  The District Court granted a writ of habeas corpus to petitioner, Martinez Wade, a Michigan prisoner convicted in 1998 of involuntary manslaughter, receiving stolen property and fleeing the scene of an accident.  He was sentenced to a term of 10 to 15 years. The District Court issued the writ on the ground that the prosecutor asked improper questions constituting prosecutorial misconduct in violation of the Due Process Clause.  Trial counsel failed to object to the questions, and the Court concluded that this failure to object constituted ineffective assistance of counsel in violation of the Sixth Amendment.  The District Court held that counsel's failure to object created "cause and prejudice" sufficient to excuse the procedural default of Wade's prosecutorial misconduct claim in state court. We conclude that the prosecutor's improper questions were not sufficiently flagrant or harmful to rise to the level of misconduct in violation of the Due

Process Clause. We remand the case to the District Court for consideration of Wade's other claims, including his free-standing ineffective assistance of counsel claim.

## I.

A Chevrolet Camaro struck the car of Kevin Marshall on December 13, 1996, causing his death. Officers arriving at the scene found the driver's seat empty and Jason Franklin in the front passenger's seat. Franklin, the key witness at Wade's criminal trial, testified that Wade was the driver and that he had fled the scene of the accident. Without objection by Wade's counsel, Franklin also testified that a man known to him only as "Jeffrey" had shot him 27 times after Wade was in jail but that he knew of no relationship between Jeffrey and Wade. The man had said to Franklin, "What's up with that fed stuff?" The District Court held that the questions that elicited these statements from Franklin called for irrelevant information because no connection between Jeffrey and Wade was established. The Court concluded that the questions violated the Due Process Clause.[1]

---

[1]The pertinent questions and answers that formed the basis of the District Court's ruling are as follows:

Q      All right. Sir, I want to draw your attention to July 2nd, 1997. In the city of Detroit, on or about the Hazelwood area, did something happened [sic] to you on that day?

A      Yes.

Q      Okay. Could you tell the jury what happened to you?

A      I got shot 27 times.

Q      And when you say 27 times, was that with shotgun pellets or --

A      It was a shotgun and a handgun.

Q      Okay. And do you recall the people that shot you?

A      Just one of them.

A dispute arose at trial concerning Franklin's identification of Wade a few days after the accident. He viewed a photographic array of pictures and chose Wade's picture. At trial the officer who conducted the process referred to Wade's picture used in the identification process as a "mugshot" and testified that the picture was used in a photographic array and displayed in a police circular that contained "wanted felons." The prosecutor then introduced the photo array in evidence

---

Q        What's that?

A        One of them.

Q        Okay. And could you tell us what happened when that person shot you?

A        A car just drove up on my car....And I remember the guy just whipped out – and he was, like What's up with that fed stuff? He was, like, What's up with that fed stuff? And I was, like, I don't – what fed stuff? What fed stuff? I threw my car in park. The girl jumped out. She ran. I jumped out, and I was able to run behind they car. And I ran, like, three blocks over.

Q        Okay. Let me ask you this. The person that shot you, was that the person that said what's up with that fed stuff? [*See* J.A. 163]

A        Yes.

Q        Okay. And you know that person?

A        Yes.

Q        Okay. Could you tell us who it is?

A        A guy by the name of Jeffrey.

Q        Jeffrey. And how do you know Jeffrey?

A        I knew him from when I grew up.

. . . .

Q        Okay. Mr. Franklin, you said that Jeffery was the shooter, correct?

A        Yes, sir.

Q        Is there any relationship with Jeffery and Mr. Wade?

A        Not that I know of.

-3-

and brought to the jury's attention that the Wade "mugshot" had a City of Detroit identification number. No objection was raised to the "mugshot" evidence even though it could give rise to an inference that Wade had been in trouble with the law previously. The District Court held that this evidence increased the prejudice arising from Franklin's "Jeffrey" testimony.

Citing only Michigan cases, the Michigan Court of Appeals held that these unobjected to acts of the prosecutor did not constitute misconduct. The District Court disagreed concluding that the State's introduction of Franklin's testimony that he was shot by "Jeffrey," as well as the mugshot evidence introduced by the State, violated the Due Process Clause. The District Court cited as its only Supreme Court authority the case of *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The District Court's finding of unconstitutional prosecutorial misconduct was based solely on the introduction of the shooting and mugshot evidence.

The State concedes that the relevance of the shooting "evidence was not strong," almost but not quite conceding its irrelevance and inadmissibility. The State argues in its brief that this unobjected to testimony had little effect because the prosecutor himself "elicited from Franklin that he knew of no connection between Jeffrey and Petitioner." With respect to the mugshot evidence, the State argues that Wade's counsel first raised a question about the credibility of witnesses giving identification testimony which made it necessary for the prosecution to show how Wade was first identified by witnesses as the driver of the car.

On appeal the Michigan Court of Appeals made a factual error. It stated that "the prosecutor did not engage in misconduct by introducing evidence that <u>defendant</u> [Wade rather than "Jeffrey"] shot a key prosecution witness [Franklin] prior to trial." That court was apparently under the

misapprehension that Wade had shot Franklin. The District Court held that the mistake means that "another basis exists for granting habeas corpus relief" because under 28 U.S.C. § 2254(d)(2) the Michigan Court of Appeals opinion "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**II.**

Even though the Michigan Court of Appeals made a mistake of fact, and even assuming that the District Court held that trial counsel's waiver of any objection provided cause and prejudice for the procedural default in the State court, there remains as the central problem in the case the legal requirement that the prosecutor's conduct must rise to the level of prosecutorial misconduct in violation of the Due Process Clause.

Under AEDPA, 28 U.S.C. § 2254(d), we may not issue the writ unless we conclude that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application . . . of [a determination] by the Supreme Court of the United States." Under *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), the prosecutor's conduct must pervade the trial and "infect [ ] the trial with unfairness." In *Donnelly* the court found no such violation because of the limited scope of the remarks. The Court reached the same result in *Darden v. Wainwright*, 477 U.S. 168 (1986), in which the court emphasized the limited nature of the prosecutor's remarks and the fact that they did not misstate the evidence or permeate the trial.

In the present case the improper questions and answers were isolated and the prosecutor could point only to the fact that Franklin quoted his assailant, Jeffrey, as saying, "What's up with that Fed stuff" as a possible link of some kind to Wade. This link is insufficient to make the

evidence relevant. We agree with the District Court that this evidence, as it stood, was irrelevant; but our review of the record does not disclose bad faith by the prosecutor. He simply had an extremely weak argument that the evidence was relevant. The evidence came in because defense counsel did not object to evidence that clearly was inadmissible.

We find no Supreme Court authority supporting the District Court's holding that a prosecutor's questions simply calling for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal Due Process violation. The withholding of certain types of exculpatory evidence or prosecutorial questions or comments in violation of a defendant's Fifth Amendment privilege to remain silent or the introduction of perjured testimony in some circumstances will rise to that level. We find no authority for finding such a violation when the prosecutor asks questions which simply call for answers which should be deemed inadmissible on grounds of relevancy. Such questions by trial counsel creating evidentiary errors of this type are not infrequent. It is the function of defense counsel to object in order to protect his client's interest. The prosecutor here did not introduce false evidence or evidence that violated a specific constitutional prohibition. The same witness testified in answer to the prosecutor's question that he knew of no connection between Wade and Jeffrey. Our review of the record does not reveal that the prosecutor's questions were so flagrant or so far over the line and pervasive as to rise to the level of a federal Due Process violation sanctioned by a decision of the Supreme Court.

In the absence of any Supreme Court precedent under AEDPA supporting the "prosecutorial misconduct" ruling of the court below, we are obliged to reverse the judgment of the court below

and remand for consideration of Wade's remaining claims, including his free-standing claim of

ineffective assistance of counsel.