NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-1063

WILLIE GOODING,
                                        Appellant

v.

JAMES WYNDER, Superintendent, State Correctional Institution at Dallas;
*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
THOMAS CORBETT, Attorney General of Pennsylvania;
DEPUTY PROSECUTOR YORK COUNTY DISTRICT ATTORNEY

*(Pursuant to Rule 43(c), Fed. R. App. P.)

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 1-07-cv-01243)
District Judge:  Honorable Yvette Kane

Submitted Under Third Circuit LAR 34.1(a)
on October 27, 2011

Before:  FISHER, VANASKIE and ROTH, Circuit Judges

(Opinion filed: January 25, 2012)

O P I N I O N

**ROTH**, <u>Circuit Judge</u>:

Willie Gooding appeals the District Court's denial of his petition for a writ of habeas corpus in relation to convictions for kidnapping and third degree murder. We limit our review to the two issues on which the District Court granted certificates of appealability, and for the reasons explained below, we will affirm the denial of Gooding's petition.

## I.  BACKGROUND

On November 7, 1996, Terrence Murphy, accompanied by two other men, attempted to rob a house in York, Pennsylvania, where Gooding and others engaged in illegal drug trafficking. While fleeing the scene, Murphy fired shots at Charles Malloy, an associate of Gooding's. Though uncertain of the shooter's identity, Gooding, Malloy and two other men - Antoine Brown and Corey Riera – speculated that Murphy and Arthur Irick, both known for robbing drug dealers, might have been involved and set out in search of them to retaliate. They soon found Irick, and, thinking that he could be of use in locating Murphy, picked him up in one of their cars and continued their search. Irick directed them to an apartment building where he thought Murphy could be found, but he was not there. At that point, the men drove to an isolated lot and forced Irick out of the car. Malloy then shot him four times, killing him.

Based upon evidence of the above presented at trial in Pennsylvania state court, Gooding was convicted, as an accomplice, for the kidnapping and third degree murder of Irick. He was sentenced to the maximum 20-40 years imprisonment for third degree murder and the maximum 10-20 years imprisonment for kidnapping. He was

2

unsuccessful in appealing his conviction in Pennsylvania state court and filed a petition for a writ of habeas corpus in the District Court. That court denied the petition but granted certificates of appealability on two issues: (1) whether the prosecutor's conduct so infected the trial with unfairness as to deny Gooding due process and (2) whether Gooding was deprived of his Sixth Amendment right to counsel by his attorney's failure to request a jury instruction clarifying the limited purpose for which "other bad acts" evidence was admitted. Gooding now raises these issues in his appeal to this Court.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Gooding's petition pursuant to 28 U.S.C. § 2241 and our jurisdiction to hear his appeal is based on 28 U.S.C. § 1291 and § 2253. Our review is plenary, so we scrutinize the state court determinations under the same standards as did the District Court. *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009). Under those standards, a writ of habeas corpus can be granted by a federal court on a claim that was "adjudicated on the merits" in state court only if the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A claim is adjudicated "on the merits" when it is finally resolved based on its substance rather than on a procedural or other ground. *Thomas*, 570 F.3d at 117. When a claim before a federal habeas court has not been previously adjudicated "on the merits," however, that court conducts *de novo* review over pure questions of law and mixed questions of law

3

and fact. *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). Regardless of how a claim was adjudicated in state court, that court's relevant factual determinations are presumed correct, rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. <u>DISCUSSION</u>

### A. Due Process

Gooding first argues that his due process rights were violated by repeated comments by the prosecutor that rendered his criminal trial fundamentally unfair. He identifies 23 separate instances of such statements, made throughout the various stages of the trial, which generally portray drug dealers in a negative light, emphasize the fact that Gooding and his associates are drug dealers from New York City, and ascribe responsibility for many of the problems facing York to the illegal activities of these outsiders. Gooding argues that these statements deprived him of a fair trial because their intent and effect were to cause the jury to conclude that he was a dangerous person and to convict him in order to address the problems in York.

Gooding is correct that prosecutorial misconduct can "so infect[] [a] trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This occurs, though, only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." *Id.* at 642. Under our interpretation of Supreme Court precedent, determining whether this type of due process violation has occurred requires us to "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of [any] curative instructions, and the quantum of

4

evidence against the defendant." *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001).

We agree with the District Court that the prosecutor's statements connecting Gooding to drug trafficking were not improper. Evidence that Gooding and his associates were involved in such activity served to establish a connection between the four of them and provided context and a motive for Irick's kidnapping and murder. The prosecutor's references to Gooding's drug dealing were therefore within bounds.

We also agree that the prosecutor's statements about crime in York in general, its association with outsiders from New York City, and the resulting implication that Gooding and his associates were responsible not merely for Irick's murder but also for broader social problems in York were objectionable. However, in the context of the entire trial, there were only a few isolated statements to this effect and they were made only tangentially to proper statements explaining the connection between Irick's murder and drug trafficking. We also note that the trial judge instructed the jury that statements of counsel were not evidence, thus minimizing any potential prejudice from these statements. And perhaps most importantly, there was significant evidence of Gooding's guilt. Two of the other men involved in Irick's murder, Brown and Riera, provided detailed testimony about Gooding's role, thereby implicating him as an accomplice. This testimony was consistent with the prosecution's theory of the case and was corroborated by the testimony of other witnesses, such as Terrence Murphy. The testimony was also supported by physical evidence, including a murder weapon found with Riera's assistance that matched casings found at the crime scene. Finally, there was evidence of a strong motive for the crimes. In light of all this evidence, the fact that any

5

objectionable statements were not prominent in the context of the trial, and the general jury instruction that such statements were not evidence, we find that the prosecutor's comments did not infect the trial with unfairness and thus did not render Gooding's conviction a violation of his due process rights.

B.  Ineffective Assistance of Counsel

As we have discussed, the prosecution's evidence of Gooding's engagement in drug trafficking was relevant because it explained the relation between the four assailants, their connection to Irick, and their motive for kidnapping and murdering him. Gooding argues, however, that such evidence could have led the jury to make improper inferences of his bad character and propensity to engage in crime, and that his attorney should have requested that the court give an instruction to the jury to prevent it from reaching these conclusions.  He claims that his attorney was ineffective for failing to do so, thus depriving him of his Sixth Amendment right to counsel.

Pursuant to Supreme Court precedent, Gooding can make out a claim of constitutionally ineffective counsel only if he can demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced [him]." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984)).  To establish prejudice, Gooding must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Even assuming that

6

the failure to request a limiting instruction in relation to evidence of Gooding's engagement in drug trafficking was deficient performance by his attorney, we find that Gooding cannot succeed on this claim because he cannot establish that he was prejudiced. We reach this conclusion based on the strength of the evidence of Gooding's guilt, which we are required to consider. *See Buehl v. Vaughn,* 166 F.3d 163, 172 (3d Cir. 1999). As we have described, such evidence was significant, including incriminating testimony provided by two of his fellow assailants, corroborating testimony by other witnesses, physical evidence, and strong evidence of motive. Accordingly, we are confident that the outcome of Gooding's trial would not have been different had his attorney requested a limiting instruction related to evidence of his drug trafficking, and we reject his claim of ineffective assistance of counsel.

## III.  **CONCLUSION**

For the reasons explained above, we will affirm the District Court's order denying Gooding's petition for a writ of habeas corpus.