967 F.2d 596
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert E. WHITE, Petitioner-Appellant,
v.
John AVENETTI, Warden; and Robert Corbin, Arizona Attorney
General, Respondents-Appellees.
 No. 91-16510.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 13, 1992.*
Decided June 18, 1992.
 
 Before BOOCHEVER, REINHARDT and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Robert E. White is a state prisoner now incarcerated at Douglas, Arizona. He appeals pro se the district court's denial and dismissal of his petition for a writ of habeas corpus challenging his conviction for second degree burglary, sexual assault, and the lesser included offense of assault. He raises four arguments for appellate review. He claims he was denied a fair trial, that the photographic lineup was unduly suggestive and that the prosecutor committed misconduct.[1] We affirm.
 
 BACKGROUND
 
 3
 Tammie Ellmer ("Ellmer") left her son with the Trujillos, who were baby-sitting him. Robert E. White ("White") was at the Trujillos when Ellmer came to pick up her son. Ellmer visited briefly with White and the Trujillos before returning to her apartment. Subsequently, Ellmer saw Juan Trujillo and White outside. She joined them for a brief conversation and then returned to her apartment to take a shower. Ellmer was preparing to shower when she heard a knock at the door. She asked who was there. White identified himself by name. Ellmer told him to go away and began showering. A few minutes later, White broke in and forcibly engaged in sexual intercourse with Ellmer. Juan Trujillo heard screams and entered Ellmer's apartment. He pushed the bathroom door open approximately six inches and saw White on the floor holding Ellmer by the hair and punching her in the face. White was later arrested and convicted of sexual assault, second degree burglary and a lesser-included offense of assault. This appeal follows the district court's denial of White's habeas corpus petition.
 
 DISCUSSION
 1. Identification
 
 4
 White first challenges the propriety of the identification procedures. He argues that the photographic line-up from which he was identified was "unduly suggestive" and that Ellmer's identification of him was unreliable. The determination of whether a pretrial identification procedure compromises a defendant's right to due process of law involves a two-step analysis. The first inquiry is whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. Manson v. Brathwaite, 432 U.S. 98, 110 (1977); See also Neil v. Biggers, 409 U.S. 188, 198-99, (1972). Second, if the evidence is obtained through an impermissible procedure, the identification is still admissible if the "totality of circumstances" suggest that the identification process was reliable. Neil, 409 U.S. at 199. In the instant case, when asked to identify her assailant's photo in a photo display, the victim stated that it could be either of two photos that were too similar to tell apart. One of the photos was of White. The trial court confirmed the fact that the photos were similar. There is no indication that the identification procedure was suggestive.
 
 
 5
 An analysis of the second prong of the identification test further suggests that the process was reliable. In looking at the totality of circumstances, the victim had sufficient opportunity to observe White. She engaged in conversation with White for a considerable period of time before the attack. She viewed him immediately before and during the assault. White also identified himself by name when he knocked at the door prior to the attack. In addition, Juan Trujillo identified White as the alleged attacker. The totality of circumstances clearly indicate that Ellmer's identification of White was reliable.
 
 2. Cumulative Effect
 
 6
 White argues that the cumulative effect of the trial court's ruling denied him a fair trial. In reviewing a district court's denial of a petition for a writ of habeas corpus, we "cannot consider facts or issues not presented to the district court." Powell v. Spalding, 679 F.2d 163, 167 (9th Cir.1982). White did not raise the cumulative effect claim in district or state court. Because he failed to raise the issue to the district court, the issue is not properly before us and not subject to appellate review.
 
 3. Judge Pro Tempore
 
 7
 White contends that he was denied a fair hearing because a judge pro tempore presided over his trial. He asserts that he was entitled to a trial by a regularly seated superior court judge and because pro tempore judges are often not available to hear post-conviction relief, it was unfair to have a pro tempore judge preside over his trial.
 
 
 8
 Habeas relief is not available when a petitioner merely alleges that something in the state court proceedings was contrary to general notions of fairness. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985). Relief is only available if the United States Constitution or other federal law specifically protects against the alleged unfairness. Id. There is no federal prohibition against pro tempore judges from presiding in state courts. The Arizona Constitution clearly provides for the appointment and usage of pro tempore judges. It states, "[t]he Legislature may provide for the appointment of members of the bar having the qualifications provided in § 22 of this article as judge pro tempore of courts inferior to the Supreme Court." Ariz. Const. art. 6, § 31. The appointee must be at least thirty years of age, of good moral character, admitted to the practice of law in and a resident of the State for five years. Ariz. Const. art. 6, § 22. "Upon request of the presiding judge of the superior court in any county the chief justice of the state supreme court may appoint judges pro tempore of the superior court ..." Arizona Revised Statutes, § 12-141 (1982). The Arizona Supreme Court has held that, when possible and as a matter of judicial economy, cases involving lengthy prison sentences should be assigned to permanent judges who are more likely to be available later to hear post-conviction relief. State v. Prince, 772 P.2d 1121, 1124 (Ariz.1989). This is merely a suggestion to be followed when possible. No violation occurs if a case involving a lengthy prison sentence is assigned to a judge pro tempore. Hence, there is no unfairness in having a judge pro tempore preside.
 
 
 9
 Furthermore, White did not object to the judge pro tempore at the time of his trial. Challenges to a particular individual sitting as a trial court judge are waived if not raised in trial court. See Z Channel Ltd. Partnership v. Home Box Office, Inc., 931 F.2d 1338, 1345 (9th Cir.1991), cert. denied, 112 S.Ct. 875 (1992). Thus, even if White's claim of unfairness had merit, which it does not, the claim is barred because it was not raised at trial court.
 
 4. Prosecutorial Misconduct
 
 10
 White claims that prosecutor committed misconduct by "misquoting" defense counsel in his closing argument. In his opening argument defense counsel stated, "We'll show you ... that the defendant did not burglarize the home and did not sexually assault anyone." The prosecutor, in his closing argument, stated, "... if you recall when Mr. Dairman first addressed you ... he told you that once the case was over there would not be any evidence that his client had sexual intercourse with anyone that night." The prosecutor went on to say that, "... Mr. Dairman is now agreeing that ... there was sexual intercourse ... and ... it was consensual."
 
 
 11
 Prosecutorial misconduct requires that the prosecutor's allegedly improper remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The remarks must be examined in the context of the entire trial to determine whether they rendered the trial "fundamentally unfair." See id. at 645. In this case, the prosecutor's remarks followed by jury instructions stating that the opening and closing arguments were not evidence and counsel's disagreement regarding what each other said was not to be considered. In addition, as the Arizona Supreme Court noted, there is overwhelming evidence against White making it unlikely that the prosecutor's "misquote" had any influence on the jury. Under these circumstances White fails to meet the "fundamentally unfair" requirement.
 
 
 12
 The denial of the petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a), and Ninth Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It is unclear whether White is additionally raising issues of ineffective assistance of counsel, improper jury instruction, and admission of improper evidence. Our reading of his brief is that the cursory reference to such claims is merely in support of his other claims. Even assuming these are issues for the panel's review, they have no merit. The ineffective counsel claim was not raised before the district court. The claim regarding the illegally seized evidence cannot be a basis for granting the writ under Stone v. Powell, 428 U.S. 465, 494 (1976), which holds that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Finally, we agree with the district judge that the jury instructions did not amount to constitutional error when considered in light of the totality of the circumstances