**Paul Anthony PAULINKONIS,**
**Petitioner—Appellant,**

**v.**

**Leslie RYDER, Respondent—Appellee.**

No. 02–35392.

D.C. No. CV01–0326–TSZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2003.

Submission Vacated July 14, 2003.

Resubmitted Oct. 23, 2003.

Decided Oct. 27, 2003.

Before REAVLEY,* TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM**

Washington state prisoner Paul Anthony Paulinkonis ("Paulinkonis") appeals the district court's order denying his 28 U.S.C.

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

§ 2254 petition for a writ of habeas corpus, which challenged his 1996 jury trial conviction for first-degree murder. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

We review *de novo* the district court's decision to deny Paulinkonis' habeas petition. *See Alvarado v. Hill,* 252 F.3d 1066, 1068 (9th Cir.2001). The district court's factual findings are reviewed for clear error. *Killian v. Poole,* 282 F.3d 1204, 1207 (9th Cir.2002), *cert. denied,* 537 U.S. 1179, 123 S.Ct. 992, 154 L.Ed.2d 927 (2003). Because Paulinkonis filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), the AEDPA controls and limits our review of matters adjudicated on the merits in the Washington state courts. *See Killian,* 282 F.3d at 1207–08. The AEDPA requires federal courts to deny habeas relief unless the state court ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, the state court's factual determinations are presumed to be correct. *Id.* § 2254(e)(1). Because the parties are familiar with the factual and procedural history of this case, we recite the facts only to the extent necessary to explain our judgment.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

## I.

■ Paulinkonis argues that his counsel was ineffective for failing properly to prepare a defense forensic expert for trial or to move for a continuance when the expert was surprised by new information just before his appearance at trial. As a result, the defense expert was unable to testify as planned. In order to succeed on this claim, Paulinkonis must show that his counsel's performance fell below an "objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In addition, Paulinkonis must show prejudice. That is, he must demonstrate that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Washington Court of Appeals found that trial counsel's actions were deficient for failing to prepare the expert or to move for a continuance, but it also found that the error was not prejudicial. The district court found that the Court of Appeals' conclusion was neither contrary to nor an unreasonable application of clearly established federal law. The district court also noted that, even had the expert testified, "it is highly unlikely that such testimony would have tipped the scales in favor of acquittal." Paulinkonis has failed to provide authority demonstrating that the Court of Appeals' conclusion contradicted or unreasonably applied clearly established federal law, as established by the Supreme Court. Therefore, he cannot succeed on this claim.

Paulinkonis also contends that the district court erred in refusing to hold an evidentiary hearing on prejudice. Under the AEDPA:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. §§ 2254(e).

The parties debate whether Paulinkonis failed to develop the factual basis of his claim in state court, as required by § 2254(e)(2). Even if Paulinkonis could overcome this bar, however, he would not be entitled to an evidentiary hearing, because he has not "allege[d] facts which, if proven, would entitle him to relief." *Belmontes v. Woodford*, 335 F.3d 1024, 1053 (9th Cir.2003). Where a petitioner seeking relief on his ineffective assistance of counsel claim cannot demonstrate prejudice even if his allegations are proved, he is not entitled to an evidentiary hearing. *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir.1995). Here, other evidence strongly incriminated Paulinkonis, and the Court of Appeals relied on multiple factors

in concluding that there was no prejudice. Paulinkonis has not demonstrated that if his expert's testimony had been admitted, it would clearly and convincingly rebut the state court's factual finding. Nor has Paulinkonis shown that the Court of Appeals conclusion was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## II.

Paulinkonis also argues that the prosecutor committed misconduct with two statements in his closing argument. In order to succeed on this claim, Paulinkonis must show that the comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Paulinkonis must show that the comments " 'had [a] substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

■ Paulinkonis first contends that the reference in the closing argument to the "Worst Acts in the History of Mankind, Crimes of War" constituted prosecutorial misconduct. The Court of Appeals did not find the statement to constitute misconduct. It held that: "Given the context of the remark, it is clear that the prosecutor was simply attempting to explain the concept of premeditation to the jury.... Paulinkonis has shown neither impropriety nor prejudice." Paulinkonis has not shown that the conclusion was contrary to or an unreasonable application of clearly established federal law.

■ Paulinkonis also charges that the prosecutor improperly commented on his exercise of the right to counsel. After reminding the jury that Paulinkonis had denied committing the crime for a month, the prosecutor stated:

A month later the defendant says, well, you know, come to think of it I did shoot him. And he characterized it, I think it's fair to say that he characterizes it as almost as if it is some sort of spiritual revelation that he engaged in with Jim Rice.... Here's an interesting thing you will observe when you go back in deliberations. Two days before he spoke to Jim Rice he wrote a letter to his mother, and if you read the letter you will see he already had a lawyer. I suggest to you that this claim of self-defense was not some kind of divine inspiration....

The Court of Appeals rejected Paulinkonis' claim that he was denied due process based on these comments. The Court of Appeals found:

There is no substantial likelihood that this remark affected the outcome of the trial. First, as shown above, the court immediately issued a curative instruction which directed the jury to disregard any inference that Paulinkonis only claimed self-defense because his attorney suggested it. Second, this remark was the only reference to Paulinkonis's attorney amidst a 32–page transcript of his closing argument. Finally, there was a great deal of evidence supporting the State's theory of premeditated murder. For example, although Paulinkonis testified that he was standing just inside the doorway when he shot into Overvold's room-which was measured to be approximately 9 feet from Overvold's bed-a forensic pathologist and a forensic

scientist testified that their analysis indicated that Overvold was shot at a range of 2–3 feet. Moreover, he was shot in the heart, stabbed in the heart three times, and subsequently mutilated. Paulinkonis even admitted staging both the body and the house to make it look like a drug killing or a burglary. Given the circumstances, there is no substantial likelihood that the prosecutor's comment with regard to Paulinkonis's attorney impacted the jury's verdict to his prejudice, thereby depriving him of a fair trial. The trial court did not abuse its discretion in denying Paulinkonis's motion for a mistrial on the basis of prosecutorial misconduct.

Given that the trial court issued a curative instruction and in view of the other evidence against Paulinkonis identified by the Court of Appeals, even if the comment was improper, it was unlikely to have had a "substantial and injurious effect" on the jury's verdict. Paulinkonis has not shown that the Court of Appeals' ruling was contrary to or an unreasonable application of clearly established federal law.

### III.

In supplemental briefing, Paulinkonis argues that the State violated his Fourth Amendment rights by seizing and searching without a warrant or probable cause a letter he had written to his mother.[1] In the letter, which he wrote prior to his arrest, Paulinkonis warns his mother about police tactics and asks her to speak only to his attorney. Paulinkonis argues that admission of this tainted letter at trial had a substantial and injurious effect on the jury

verdict. First, the prosecution used the letter to show Paulinkonis' consciousness of guilt. Second, admission of the letter forced him to explain to the jury that his mother and sister were serving prison sentences for the murder of his father. Finally, the letter allowed the prosecutor to argue that Paulinkonis had hired an attorney by the time he admitted to the killing, and to suggest that he and his attorney had concocted the self-defense claim.

■ The Court of Appeals held that even if one assumes the letter was seized and searched in violation of the Fourth Amendment, the error was harmless. In determining on direct appeal whether a federal constitutional error is harmless, courts must apply the "harmless beyond a reasonable doubt" standard. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Although it did not mention the *Chapman* standard by name, the Court of Appeals stated that it was applying the " 'overwhelming untainted evidence test,' under which appellate courts look only to the untainted evidence to decide if it is so overwhelming that it necessarily leads to a finding of guilt." In applying this test, the Court of Appeals concluded that an overwhelming amount of untainted evidence of Paulinkonis' guilt remained. In particular, there was forensic evidence that the victim had been shot at close range and stabbed in the heart, eyewitness testimony that there was very little blood in the room or on the bed, and Paulinkonis' own testimony that he staged the crime scene to look like a drug killing or a burglary.

---

**1.** The district court granted a certificate of appeal (COA) only as to two claims: ineffective assistance of counsel and prosecutorial misconduct. Paulinkonis then filed a motion in this court to expand the COA. We granted the motion in part-as to his Fourth Amend-

ment claim (after examining, *inter alia*, the *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), issue) and cumulative error claim-and received supplemental briefing on these issues.

Paulinkonis has not shown that the Court of Appeals' finding of harmless error was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. The Supreme Court has at times indicated that the proper harmless error inquiry is to look not at the weight of the remaining untainted evidence, but rather at whether there is a reasonable possibility that the tainted evidence contributed to the conviction. *See Sullivan v. Louisiana*, 508 U.S. 275, 279–80, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) ("The inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error."); *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). More often, however, the Supreme Court has determined whether an error is harmless by examining the weight of the remaining untainted evidence. *See, e.g., Neder v. United States*, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The Court of Appeals decision was therefore not contrary to clearly established federal law.

Paulinkonis has also failed to show that the Court of Appeals unreasonably applied clearly established federal law to the facts of this case. Even if the Court of Appeals gave too much weight to the untainted evidence, Paulinkonis would still need to show that the Court of Appeals' application of clearly established federal law was not only erroneous but unreasonable. *See Early v. Packer*, 537 U.S. 3, 11, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). This he has not done. Having failed to show that the Court of Appeals harmless error analysis was either contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, Paulinkonis cannot succeed in his Fourth Amendment claim.

## IV.

Finally, Paulinkonis argues that even if the errors that occurred at his trial are individually harmless, cumulatively they amount to prejudicial error. As discussed above, we must defer to the Washington Court of Appeals' findings that trial counsel's ineffectiveness was not prejudicial, that the prosecutor's comment on Paulinkonis' exercise of his right to counsel was not prejudicial, and that any Fourth Amendment violation was harmless beyond a reasonable doubt. In light of these findings, we cannot conclude that the combined effect of these errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

Based on the foregoing, the judgment of the district court is **AFFIRMED**.