**Tao LI, Petitioner,**

v.

**William PHILLIPS, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 03 CV 3753NGRML.**

United States District Court, E.D. New York.

Jan. 24, 2005.

---

Tao Li, Pro se (Staten Island, NY), for plaintiff.

Eliot Spitzer, NYS Attorney General, By Kimberly T. Morgan (New York, NY), for defendant.

## *OPINION AND ORDER*

GERSHON, District Judge.

*Pro se* petitioner Tao Li applies to this court for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he is being held in custody in violation of the Constitution and laws of the United States, pursuant to the judgment of a court of the State of New York. For the reasons set forth below, petitioner's application is denied.

## PROCEDURAL HISTORY

On April 22, 1998, the home of Yue Yun Chiang, located in Queens County, New York, was burglarized, and several items were stolen, including four ivory statues and a wooden base. In connection with this crime, petitioner was convicted of burglary in the second degree, N.Y. Penal Law § 140.25(2), petit larceny, N.Y. Penal Law § 155.25, criminal mischief in the fourth degree, N.Y. Penal Law § 145.00(1), and criminal possession of stolen property in the fifth degree, N.Y. Penal Law § 165.40, following a jury trial in New York Supreme Court, Queens County (Flaherty, J.). Petitioner was sentenced on February 18, 1999 as a second violent felony offender to concurrent determinate prison terms of eight years for the burglary count and one year for each of the other counts.

On direct appeal to the Appellate Division, Second Department, appellate counsel briefed one issue: That petitioner was deprived of his due process right to a fair trial when the court declined to give an advance ruling as to whether the prosecutor could elicit on cross-examination that appellant had told a police officer that he was on parole. In addition, petitioner filed a *pro se* supplemental brief arguing that his trial counsel was ineffective for the following reasons: (1) counsel failed to cross-examine the fingerprint experts effectively; (2) counsel failed to challenge the legal sufficiency of the fingerprint evidence and its chain of custody; and (3) counsel failed to secure a hearing to challenge the police officer's probable cause to arrest him and to suppress the evidence seized by the police. By decision dated February 20, 2001, the Appellate Division affirmed petitioner's conviction, finding that the trial court did, in fact, rule on whether the prosecution could cross-examine petitioner about the statement concerning his parole status. The court stated that "[t]he trial court specifically ruled that the People could cross-examine the defendant as to that statement." *People v. Li,* 280 A.D.2d 623, 720 N.Y.S.2d 822 (2d Dept.2001). The Appellate Division further held that petitioner received effective assistance from his trial counsel. "Mere losing tactics," the court said, "are not to be confused with ineffectiveness, and to sustain a claim of ineffective assistance of trial counsel, proof of less than meaningful representation is required rather than disagreement with counsel's strategies and tactics." *Id.* (quoting *People v. Sinclair,* 266 A.D.2d 482, 482, 698 N.Y.S.2d 876 (2d Dept.1999)). Petitioner's request for leave to appeal to the Court of Appeals was denied. *People v. Li,* 96 N.Y.2d 807, 726 N.Y.S.2d 386, 750 N.E.2d 88 (2001).

Subsequently, petitioner, acting *pro se,* applied to the Appellate Division for a writ of error *coram nobis.* Petitioner argued that his appellate counsel was ineffective because she failed to make the following arguments: (1) that the fingerprint evidence should not have been admitted be-

cause the prosecution did not establish that the method used to lift the prints had gained acceptance in the scientific community; (2) that petitioner was denied the opportunity to confront certain witnesses; (3) that the prosecutor engaged in misconduct during summation; (4) that the trial court erred in allowing testimony, which was precluded by a pre-trial ruling, concerning petitioner's parole status; and (5) that petitioner's conviction was not supported by sufficient evidence and was against the weight of the evidence. By decision dated September 16, 2002, the Appellate Division denied petitioner's application for a writ of error *coram nobis.* Citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Appellate Division held that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Li,* 297 A.D.2d 690, 747 N.Y.S.2d 192 (2d Dept.2002). Leave to appeal to the Court of Appeals was denied. *People v. Li,* 99 N.Y.2d 633, 760 N.Y.S.2d 114, 790 N.E.2d 288 (2003).

Petitioner now brings a petition for a writ of habeas corpus, dated July 16, 2003, before this court pursuant to 28 U.S.C. § 2254. The petition raises claims of ineffective assistance of appellate counsel based on the same grounds raised in the *coram nobis* application.[1]

### FACTS

On the same day that Ms. Chiang's home was burglarized, petitioner was observed by Police Officer Beaury carrying two ivory statues and a wooden base. When questioned by the officer, petitioner made a statement that was later recounted by Officer Beaury as follows:

> [W]hen [petitioner] was asked about statues he was carrying, he first stated he didn't know what the officer was talking about.
>
> Then he stated a friend had dropped him off and that he was going to the bathroom and that he found the property on the side of the road and he picked it up and looked at it.
>
> When he saw the officer coming, he put it down because he didn't want the officer to stop him because he was on parole . . . .

Transcript at 3. Prior to trial, petitioner moved to suppress this statement, as well as certain fingerprint evidence; the motion was denied. Petitioner then moved to preclude the prosecution from introducing the portion of petitioner's statement to Officer Beaury that disclosed petitioner's parole status. The court ruled that the prosecution would be precluded from using that part of the statement during its case-in-chief, but would be permitted to use it in rebuttal if petitioner introduced any part of the statement. Specifically, the court stated:

> [I]f the People want to introduce that on their direct case, I'm going to require them to delete that portion of the statement indicating that the defendant was getting rid of the property because he's on parole.
>
> . . . .
>
> However, if the defendant attempts to introduce that as an exculpatory statement, that would be unfair to the Peo-

---

1. It is unclear from the face of the habeas corpus petition whether petitioner seeks to raise substantive claims about the issues underlying his ineffective assistance of counsel claim. However, this court would be barred from reviewing such claims because petitioner did not exhaust them in state court and makes no showing of cause and prejudice, or actual innocence. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Accordingly, the court addresses these issues only in the context of petitioner's ineffective assistance of appellate counsel claim, which was fully exhausted.

ple, and in a way, it would be deceiving the jury as to the true statement that the defendant made.

So, if the defendant attempts or does introduce the statement, then the entire statement, including that portion of it, indicating he was on parole, will be admitted.

Transcript at 252–53. Petitioner's counsel asked for clarification concerning the parameters of cross-examination regarding the statement should petitioner take the stand, but the court declined to make a ruling in hypothetical form:

We'll see what his testimony is going to be. Depends on his testimony. Depends on his explanation as to what he was doing with the property and why he put it down.

. . . .

... We'll see what he testifies to. I'm not going to be bound by "what if," "what if."

We'll see what happens during the course of the testimony, and then we'll see whether or not the testimony may be elicited on cross-examination.

Transcript at 261.

At trial, the prosecution called six witnesses: Officer Beaury; Detective Tecknus, the lead detective on the burglary investigation; Detective Palmer, the detective who fingerprinted petitioner; Officer Stanulis, the officer who dusted Ms. Chiang's home for fingerprints; Lennox Jitta, a fingerprint technician; and Ms. Chiang. Taken in the light most favorable to the prosecution, the testimony of these witnesses established the following facts: Ms. Chiang returned home from work at approximately 1:00 p.m. on the day of the burglary, after receiving a telephone call from her daughter. When she arrived at the house, she found the rear bedroom window broken, and the side door, which had been locked, open. She discovered that several items were missing, including four ivory statues and a wooden base. That same day, while on scooter patrol in Ms. Chiang's neighborhood, Officer Beary observed petitioner carrying two of Ms. Chiang's statues and the wooden base. When approached by Officer Beaury, petitioner put the statues beneath a parked car and started running in the opposite direction, but was eventually caught. Petitioner's fingerprints were later found on the rear window and side door of Ms. Chiang's home.

The defense did not call any witnesses. Following closing arguments, defense counsel moved for a mistrial, arguing that the prosecutor engaged in misconduct by making inappropriate comments during summation; the motion was denied. On January 13, 1999, the jury returned a verdict of guilty on all counts in the indictment.

## DISCUSSION

### I. Standard of Review

Since petitioner filed this petition for a writ of habeas corpus after April 24, 1996, it is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (1996). AEDPA mandates deference to state court decisions by federal courts conducting habeas corpus review. Under its provisions, an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The habeas court must presume that the state court's determination of factual issues is correct unless the petitioner demonstrates otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that a state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Court has further held that a state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply incorrectly or erroneously. *Id.* at 411, 120 S.Ct. 1495. The Court of Appeals for the Second Circuit has clarified this standard, holding that "[although] some increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir.2001) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)).

■■■ A state court need not analyze each individual claim or cite federal law to trigger the deferential AEDPA standard of review, so long as it disposes of the claim on the merits and issues a judgment. *Ryan v. Miller*, 303 F.3d 231, 245–46 (2d Cir.2002). Here, in response to petitioner's application for a writ of error *coram nobis*, the Appellate Division held that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Li*, 297 A.D.2d 690, 690, 747 N.Y.S.2d 192 (2d Dept.2002) (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). That holding warrants deferential review under AEDPA.

## II. Ineffective Assistance of Appellate Counsel

■■■ The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on the defendant's first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Claims of ineffective assistance of counsel are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is judged ineffective when: (1) counsel's performance falls below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–694, 104 S.Ct. 2052. In light of AEDPA, the relevant inquiry for this court is whether the decision of the Appellate Division denying petitioner's application for a writ of error *coram nobis* was contrary to, or an unreasonable application of, the *Strickland* test.

■■■ Petitioner argues that his appellate counsel was ineffective because she raised one issue that was frivolous and declined to raise five others that were not frivolous. It is not sufficient, however, for a habeas petitioner claiming ineffective assistance of appellate counsel to show that counsel omitted a nonfrivolous argument. Counsel is not obliged to advance every nonfrivolous argument that could be made, even if

pressed to do so by his or her client. *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Aparicio,* 269 F.3d at 95. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones,* 463 U.S. at 751–52, 103 S.Ct. 3308. To prevail, petitioner must show both that counsel's decision to focus on the pre-trial ruling, to the exclusion of the other issues cited by petitioner, fell below an objective standard of reasonableness under prevailing professional norms, and that, had counsel argued one of the other issues, there is a reasonable probability that petitioner's appeal would have been granted.

### A. Admission of the Fingerprint Evidence

Citing *Frye v. United States,* 293 F. 1013 (1923), petitioner claims that his appellate counsel was ineffective for failing to argue that "[t]he trial court erred in ruling that the fingerprint evidence was authentic since the procedure that was used to lift the print was never established to have gained general acceptance in the particular field in which it belongs." Petitioner's Reply Mem. at 18. In *Frye,* the court held that "while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye,* 293 F. at 1014. Although *Frye*'s general acceptance test has been superseded in federal courts by Federal Rule of Evidence 702,[2] it remains the applicable standard in New York courts. *See People v. Wesley,* 83 N.Y.2d 417, 422, 611 N.Y.S.2d 97, 633 N.E.2d 451 (1994).

■ Petitioner's reliance on *Frye* is nevertheless misplaced. The crux of petitioner's argument is that the procedures used to collect the fingerprint evidence in this case were deficient. Specifically, petitioner alleges that Officer Stanulis was not accompanied to the crime scene by a partner and did not photograph the fingerprints at the crime scene prior to lifting them, as required by the police department manual. "While foundation concerns itself with the adequacy of the specific procedures used to generate the particular evidence to be admitted, the test pursuant to *Frye* ... poses the more elemental question of whether the accepted techniques, when properly performed, generate results accepted as reliable within the scientific community generally." *Wesley,* 83 N.Y.2d at 422, 611 N.Y.S.2d 97, 633 N.E.2d 451 (citation omitted). Fingerprint analysis has long been accepted in the scientific community and is regularly admitted into evidence in New York criminal proceedings. There was nothing novel or innovative about the methods used to collect and analyze the fingerprint evidence in this case. As a result, the deficiencies in procedure alleged by petitioner were relevant to the credibility and weight of the evidence, not to its admissibility under *Frye. See People v. Garcia,* 299 A.D.2d 493, 493, 749 N.Y.S.2d 882 (2d Dept.2002); *People v. Seals,* 247 A.D.2d 349, 349, 669 N.Y.S.2d 293 (1st Dept.1998).

The trial court properly exercised its discretion in admitting that portion of the fingerprint evidence for which the prosecu-

---

**2.** *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588–89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("*Frye* made 'general acceptance' the exclusive test for admitting expert scientific testimony. That austere standard, absent from, and incompatible with, the Federal Rules of Evidence, should not be applied in federal trials.").

tion laid an adequate foundation and established a chain of custody, and excluding the rest. Moreover, petitioner's trial counsel conducted extensive cross-examinations of all witnesses who participated in the collection and analysis of the fingerprint evidence, namely, Detective Palmer, Officer Stanulis, and Lennox Jitta, and argued to the jury during summation that the fingerprint evidence was flawed.

■ Since the claim concerning admission of the fingerprint evidence was meritless, appellate counsel's decision not to raise it did not fall below an objective standard of reasonableness based on prevailing professional norms. Accordingly, the Appellate Division did not apply *Strickland* in an unreasonable manner when it denied petitioner's application for a writ of error *coram nobis* with respect to this ground.

### B. Petitioner's Opportunity to Confront Witnesses

■ The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. It prohibits the admission of out of court statements that are testimonial in nature unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine. *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, (2004). Citing *Crawford,* the Appellate Division recently held that the Confrontation Clause "does not apply to statements not offered for their truth." *People v. Moye,* 11 A.D.3d 212, 782 N.Y.S.2d 257 (1st Dept.2004).

■ Petitioner claims that his counsel was ineffective for failing to argue that petitioner was deprived of a fair trial because the trial court admitted hearsay into evidence when Ms. Chiang testified that

she returned home on the day of the burglary after receiving a telephone call at work from her daughter. In response to the following question from the prosecutor: "Did there come a time that you came back to your house that day?" Ms. Chiang testified that: "My daughter back from school, and the door was open, everything open. She afraid. She call me to my office, and I came back around 1:00." Transcript at 580. It does not appear that this testimony was offered for the truth of the daughter's statement; Ms. Chiang testified independently to her first-hand observation of the open door and broken window. Rather, it was offered to explain why Ms. Chiang returned home from work in the middle of the day on the date of the burglary. In any event, the daughter's statement is not testimonial in nature and does not implicate petitioner in any way. Moreover, its admission did not prompt an objection from defense counsel, so the issue was not preserved for appellate review. For all of these reasons, admission of the daughter's statement could not provide the basis for a successful Confrontation Clause claim on appeal.

Petitioner further argues that two potential witnesses were withheld from the defense: Ms. Chiang's daughter, and a friend of the Chiangs who first reported the burglary to the police. (No reference to the friend was made at the trial.) But nothing in the record indicates that the defense ever asked the court to compel the production of these individuals.

Since the Confrontation Clause claims cited by petitioner are meritless, appellate counsel's decision not to raise them did not fall below an objective standard of reasonableness based on prevailing professional norms. Accordingly, the Appellate Division did not apply *Strickland* in an unreasonable manner when it denied petitioner's

application for a writ of error *coram nobis* with respect to this ground.

## C. Prosecutorial Misconduct

Petitioner claims that his counsel was ineffective for failing to argue that petitioner was deprived of a fair trial because the prosecutor made certain comments during his summation that were improper. To have prevailed on a claim of prosecutorial misconduct, petitioner would have needed to demonstrate that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). Under both federal and state law, comments by a prosecutor that are directed at the evidence presented during trial, or that are responsive to arguments made by defense counsel during summation, generally are not considered improper or unfair. *See, e.g., People v. Meyers,* 13 A.D.3d 395, 785 N.Y.S.2d 535 (2d Dept.2004).

■ Petitioner contends, first, that the following statements made by the prosecutor about the fingerprint evidence inappropriately commented on his failure to testify and attempted to shift the burden of proof to petitioner:

> [Prosecutor]: Now I want to discuss the fingerprints. We have several things in this case that are not controverted by the defense-
>
> [Defense Counsel]: Objection, we have no burden.
>
> [The Court]: Overruled.
>
> [Prosecutor]: There's nono contesting the fact that [petitioner] had these in his hand.
>
> [Defense Counsel]: Objection, your Honor.

> [The Court]: Overruled.
>
> [Prosecutor]: There's nothing in the evidence to show that they are not his. All the evidence in the record and inmarked into evidence shows that these are his and they match.

Transcript at 676–77. The prosecutor went on to address the defense challenges to the fingerprint evidence. Although the quoted comments were arguably burdenshifting, in context they were responsive to arguments about the fingerprint evidence made by defense counsel during summation. Moreover, the judge, while overruling the initial objections, ultimately gave a curative instruction to the jury that "the defendant has nothing to prove in this case." Transcript at 678.

■ Next, petitioner contends that the prosecutor improperly vouched for Lennox Jitta's credibility when he argued that "in his years of experience and expertise, he never made a mistake in the identification. Has he made a mistake in regards to other things? Maybe, but in terms of making the identification of fingerprints, he's never made a mistake." Transcript at 679. These comments did not amount to improper personal vouching by the prosecutor because they were responsive to arguments made by defense counsel, and they addressed testimony given by Jitta on cross-examination. When asked by defense counsel, "[Y]ou have made mistakes before?" Jitta replied, "Yes, I have made mistakes before. However, I have not made a misidentification before." Transcript at 550.

■ Finally, petitioner contends that the following comments concerning Officer Stanulis' failure to photograph the fingerprint evidence inappropriately appealed to the jury's prejudices and passions:

> There was numerous questions asked and arguments made in regards to why weren't photographs of the prints taken.

Well, ladies and gentlemen, you have something better than photographs of the prints. You have the actual prints that were lifted from the house, and I know each and every one of you are not experts, and you don't have your magnifying glass, but they were brought into court for you.

Better than photographs, you have the actual thing. And I know many of you have been victims of burglaries before-

Transcript at 681–82. Defense counsel objected to this comment and the objection was sustained by the court. Transcript at 682. When the prosecutor continued, "commonly in burglary cases . . .," defense counsel objected again. The court sustained the objection and gave an immediate curative instruction to the jury to disregard the comment. *Id.*

 The cumulative effect of these comments, particularly in light of the curative instructions given by the trial judge, did not infect the trial with a level of unfairness sufficient to make petitioner's conviction a denial of due process. Accordingly, a claim of prosecutorial misconduct based on these comments would not have been likely to succeed, and appellate counsel's decision to forgo such a claim did not fall below an objective standard of reasonableness based on prevailing professional norms. As a result, the Appellate Division did not apply *Strickland* in an unreasonable manner when it denied petitioner's application for a writ of error *coram nobis* with respect to this ground.

#### D. Admission of Testimony Concerning Petitioner's Parole Status

Petitioner claims that his counsel was ineffective for failing to argue that, despite the court's pre-trial ruling, the prosecutor elicited testimony from one of the "on-scene officers" that petitioner revealed his parole status to Officer Beaury. Petitioner's Reply Mem. at 17. The record, however, reflects no such testimony. Accordingly, this component of petitioner's ineffective assistance of counsel claim is without any factual basis.

#### E. Sufficiency and Weight of the Evidence

Petitioner claims that his counsel was ineffective for failing to argue that petitioner's conviction was not supported by sufficient evidence and was against the weight of the evidence. To have prevailed on a sufficiency of the evidence claim, petitioner would have needed to demonstrate that no rational juror could have reached the conclusion that the government satisfied its burden with respect to the elements of the crimes of which petitioner was convicted based on the evidence presented at trial. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). To have prevailed on a weight of the evidence claim, petitioner would have needed to demonstrate that the jury failed to give the evidence the weight it should have been accorded. *Id.*

 The evidence against petitioner at trial was overwhelming. His fingerprints were found on the broken window and side door at Ms. Chiang's home; he was observed by Officer Beaury, on the day of the burglary, to be in possession of items stolen from the home; and he attempted to discard those items and run when approached by the police. This evidence was ample to satisfy the government's burden, and the verdict was not against the weight of the evidence. Appellate counsel's decision to forgo the claims urged by petitioner, thus, did not fall below an objective standard of reasonableness based on prevailing professional norms. As a result, the Appellate Division did not apply *Strickland* in an unreason-

able manner when it denied petitioner's application for a writ of error *coram nobis* with respect to this ground.

### F. The Trial Court's Ruling as to Defendant's Statement Concerning his Parole Status

 Petitioner argues that his counsel was ineffective for raising a frivolous claim on direct appeal. Appellate counsel argued to the Appellate Division that petitioner was deprived of his due process right to a fair trial when the court declined to give a pre-trial ruling as to whether the prosecutor could elicit on cross-examination that petitioner had revealed his parole status to Officer Beaury. The Appellate Division found the claim to be without merit, but that does not mean that counsel's decision to argue it fell below an objective standard of reasonableness based on prevailing professional norms. In any event, since none of the claims that counsel declined to raise were likely to succeed, petitioner was in no way prejudiced by counsel's decision to raise the claim concerning the pre-trial ruling. As a result, the Appellate Division did not apply *Strickland* in an unreasonable manner when it denied petitioner's application for a writ of error *coram nobis* with respect to this ground.

### CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied in its entirety. The Clerk of Court is directed to close this case. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED.**