Filed 7/23/15  P. v. Patrick CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077555 |
| Plaintiff and Appellant, | (Super. Ct. No. 13F03983) |
| v. | |
| JACKLYN NAOMI PATRICK, | |
| Defendant and Respondent. | |

A jury convicted defendant Jacklyn Naomi Patrick of felony evading an officer. (Veh. Code, § 2800.2, subd. (a).)  The trial court granted defendant's motion for a new trial based on prosecutorial misconduct committed during closing argument.

The People appeal, contending it was an abuse of discretion to grant the motion because the prosecutor did not commit misconduct.  We shall affirm.

1

# FACTUAL AND PROCEDURAL BACKGROUND

## *The Prosecution Case*

On June 23, 2013, at around midnight, Fulton-El Camino Park District Officer Adam Bragg was locking up at Bellview Park when he saw a beige Chevrolet TrailBlazer drive through the area in excess of the speed limit.[1]

Officer Bragg jumped into his marked patrol car and drove to a nearby intersection, where he saw the TrailBlazer drive through a stop sign without stopping. He turned on his patrol car's overhead lights, and the TrailBlazer pulled over to the shoulder and stopped. As he approached the TrailBlazer, Bragg saw defendant stick her head out of the driver's side window and make eye contact with him. Three other people were in the vehicle. When Bragg reached the quarter panel of the TrailBlazer, it sped off.

Officer Bragg got into his patrol car, activated the light and sirens, and pursued defendant. Defendant drove over 70 miles per hour in a 25-mile-per-hour zone and ran a red light. The TrailBlazer crossed the median at one point, but defendant regained control and continued at a high rate of speed.

The TrailBlazer stopped when it became disabled after getting a flat tire. Defendant and the passengers fled, abandoning the TrailBlazer with the keys in the ignition and the engine still running. Officer Bragg found no purse inside the vehicle. He went to defendant's home, which was about two to three miles from the abandoned TrailBlazer. It was about 2:40 a.m. when he got there; he knocked on the door for five to six minutes but no one answered. Bragg found defendant at her home the following day. She admitted that the keys from the TrailBlazer were hers.

Officer Bragg identified defendant in a photographic lineup.

---

[1] The TrailBlazer was registered to defendant.

Defendant was out on bail for a possession of methamphetamine charge at the time of the offense.

### *The Defense*

Saundrea Mitchell is defendant's sister-in-law, and was in custody for possession of stolen property and a probation violation when she testified. She had prior convictions for possession of a stolen vehicle and prostitution. Her brother, defendant's husband, was her only support; according to Mitchell, he is "all I got." He had sent Mitchell an e-mail telling her she needed to do the right thing so that defendant would not go to jail for something Mitchell had done.

Mitchell testified without a grant of immunity. On June 23, 2013, between 11:00 and 11:30 p.m., she borrowed defendant's car.[2] She had been out that evening with four men and wanted to drop them off at home. One of the men was her friend Jay Mack, two others were his friends Trip and T.J., but she did not know the last man's name.

As Mitchell drove on Edison Avenue, a patrol car made a U-turn and got behind her. She turned left onto Bell Street and might have quickly turned onto a side street. The patrol car's red lights were activated, probably because she went through a stop sign "a little fast, or whatever the case may be." She tried to evade the patrol car by driving through a yellow light that was turning red; she then pulled over at Bell and Edison Avenue. Mitchell's passengers exhorted her to go because they did not want to go back to jail. She therefore sped off and kept going when the officer approached her vehicle. As she drove off, Mitchell looked in the rear-view mirror and noticed the officer was White.[3]

---

[2] Mitchell admitted on cross-examination that she did not have a driver's license.

[3] Officer Bragg is African-American.

Mitchell drove at least 100 miles per hour. A passenger told her to drive into an apartment complex, but she could not make it in before the complex's gate closed. She might have hit a curb because she felt the tire break, disabling the vehicle. Mitchell and the four men then fled from the vehicle through the apartment complex.

Mitchell did not talk to defendant since the day after the incident. She knew that she could be prosecuted for felony evasion or perjury as a result of her testimony. Four days after the incident, she found out from a friend that defendant had been arrested.

During a call from jail to her stepmother, Mitchell said, "Just tell him when you talk to him to go ahead and send a fucking attorney down here. That I'm going to take the case." She also explained that she was going to "own up to [her] shit." In a call with her sister, Mitchell said, "I'm going to do what I got to do to take the case, you know what I'm saying for my brother." She also said that when an attorney she was waiting for came to see her, she would "admit that it was me, that it was not her," but she would not admit to stealing the vehicle as that would result in a prison sentence. Later, she told her sister she would "admit . . . the high-speed chase," and would "submit to that she [defendant] was nowhere around us."

Eric Schaller worked with defendant at Taco Bell and rented a room from her. On June 22, 2013, defendant returned from work between 10:00 and 11:00 p.m. She did not leave for the rest of the night, although her car left about 30 minutes after she came back from work. There was a pit bull dog at the house that would have barked had someone knocked on the door. Schaller woke up at 2:00 a.m. to a commotion outside but did not hear Officer Bragg knock on the door.

Defendant testified that she encountered Mitchell walking down the street as she was driving home from Taco Bell at 8:00 p.m. on June 22, 2013. Defendant picked up Mitchell and they went to a gas station and a store and then home. Mitchell asked to borrow the TrailBlazer to take her friends home, promising to return in 30 minutes.

4

Defendant agreed and gave her the keys. She tried to report the vehicle stolen when Mitchell did not return it, but the Highway Patrol told her that she had to wait 72 hours since she had let Mitchell borrow it. She kept calling until an operator told her the vehicle was apprehended in the middle of the night.

***Closing Argument and the New Trial Motion***

During closing argument, defense counsel stated about Mitchell: "She came to court and incriminated herself. She is either going to be charged with perjury or she is going to be charged with evading arrest. That's pretty serious, to come to court and testify at trial that I was the one that did this."

The prosecutor made the following argument during rebuttal: "At the end of the day, it's only that easy if you let her get away with it. If you go back there and you listen to all those lies, Saundrea Mitchell cannot be charged with this [Vehicle Code section] 2800, with this felony evasion. [¶] What evidence, besides her saying she did it, is there? Officer Bragg never saw her. Officer Bragg didn't even know who this woman was. She only gets away with it if you let her, if you are that easily fooled, if you are that gullible to believe that this is the story."

The jury requested a readback of Mitchell's testimony regarding how she ended up at defendant's house and a transcript of the prosecutor's rebuttal,[4] but it reached a verdict before the readback of Mitchell's testimony. Before the verdict was returned, the trial court stated that the prosecutor's statement in rebuttal that Mitchell could not be charged with felony evading was inaccurate and potentially prejudicial to defendant, and that it would have sustained an objection to the statement had one been raised. The prosecutor responded she was speaking in terms of prosecutorial discretion and also asserted that Mitchell's statements alone were not enough to convict her. The trial court said the

---

[4] The trial court denied the jury's request for readback of the prosecutor's rebuttal.

prosecutor misunderstood the difference between corpus and the issue of identity. According to the trial court, while Officer Bragg's testimony would not provide Mitchell's identity as the driver, his testimony regarding the reckless evasion established the corpus of the felony evasion offense.

Defense counsel told the trial court she was "taken aback" by the prosecutor's statement, but she thought the statement referred to prosecutorial discretion, so she did not object. The trial court agreed this was not an "entirely unreasonable" inference, but the statement was also susceptible to the interpretation set forth by the court.

After the guilty verdict was announced, the trial court asked the jurors what motivated the request for the transcript of the prosecutor's rebuttal argument. Juror No. 10 said, "There was a point. I am not—I don't remember which question that was; but while we were waiting, we took a vote and deemed that that wasn't necessary." The trial court asked "what the point was that the jury was concerned about." Juror No. 10 started to respond, but Juror No. 5 interjected, "No. It was because they wanted to know—in the closing argument, it was stated that she would get in trouble for her testimony or she wouldn't get in trouble for it." Juror Nos. 5 and 10 affirmed this was about Mitchell, and Juror No. 10 said, "There was a point that she would not be charged for this crime." After an unreported sidebar with both counsel, the trial court told the jury the prosecutor's statement that Mitchell could not be charged with felony evasion based on her testimony was incorrect and asked if the prosecutor's statement figured in the jury's assessment of Mitchell's credibility.

Juror No. 6 replied, "We kind of determined that she could be charged. You know, we talked about that and at least I decided that; and I thought we all kind of agreed that she could be charged and maybe she wouldn't get convicted but that she still could be charged." The trial court gave the jury the discharge instruction and discharged the jury.

6

Defendant moved for a new trial on the basis of prosecutorial misconduct, which the trial court granted. In support of its ruling, the court found the "case involved a close question. It was strictly the credibility of Officer Bragg versus the credibility of the defendant and Miss Mitchell." The court found the prosecutor was wrong when she argued that Mitchell could not be charged with felony evasion as a result of her testimony because the prosecutor did not understand the corpus delicti rule. It also found the motion for new trial was supported by the prosecutor's "clear misstatement . . . of law and fact as to the defense witness's penal consequences for her testimony, the importance of that testimony to the determination of guilt in this case, this close case, by the jury's obvious consideration of [the prosecutor's] misstatement in its deliberation and the apparent residual uncertainty on the part of the jury about the penal consequences faced by Miss Mitchell. [¶] In the end, I believe it can be said that it is reasonably probable that a more favorable result would have occurred if the prosecutor . . . had refrained from misconduct."

The trial court followed with a summary of what it saw as the salient issues and facts in the case. It recounted Mitchell's testimony, and noted that in the court's "22 years as a prosecutor and 12 years as a judge, I have never seen that situation arise before, somebody takes the stand without immunity and confesses to an offense that could send her to prison." The court read the passage from the prosecutor's rebuttal that formed the basis of the new trial motion. The trial court was concerned the jury might have interpreted the prosecutor's statement to mean that Mitchell "could not be prosecuted for evading, notwithstanding her confession under oath on the witness stand." According to the trial court, had the jury believed the prosecutor's argument, it "would have substantially undermined her credibility as a witness since her confession would carry no penal consequence, perhaps for perjury, something the DA rarely prosecutes."

7

The trial court continued by noting it asked the foreperson what motivated the request for a readback of the prosecutor's closing argument. It next recited its questions and the jurors' responses concerning its request for the readback of the argument and how it considered the prosecutor's statement regarding the penal consequences to Mitchell from her testimony. After reciting Juror No. 6's statement, the trial court said, "that's the end of the relevant portions of those proceedings."

After stating the relevant law, the trial court reiterated that the prosecutor's statement was wrong and found: "The jury was obviously impacted by the prosecutor's argument and even the juror[s'] statement of their understanding of [Mitchell's] future peril (to the extent it may be considered) shows a lingering doubt and misapprehension by the jury." It observed that assuming Juror No. 6 correctly perceived the "fellow jurors' misunderstanding and agreement," this statement "still indicates an amount of uncertainty. Why would the jury think that [Mitchell] could be charged, contrary to the prosecutor's statement, but could still possibly not be convicted? This makes no sense from a lay jury perspective." After stating that a legal scholar could separate the two concepts, the trial court stated: "In short, Juror [No. 6's] statement leads me to believe that they were still giving some value or weight to the prosecutor's misstatement."

The trial court concluded its remarks by stating: "I don't believe it can be denied that if the jury had no question raised in its collective mind that [Mitchell] could and would face future criminal prosecution for taking the fall, it is reasonably probable that a more favorable result would have occurred if the prosecutor had refrained from raising that question in their minds."

## DISCUSSION

The People contend the trial court abused its discretion in granting the motion for a new trial because the prosecutor did not commit misconduct. We disagree.

8

Penal Code Section 1181 states in pertinent part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon [defendant's] application, grant a new trial, in the following cases only: [¶] . . . [¶] 5. When the . . . district attorney or other counsel prosecuting the case has been guilty of prejudicial misconduct during the trial thereof before a jury."

Before ordering a case retried, the trial court must make an independent determination both that the error occurred, and that the error prevented the complaining party from receiving a fair trial. (*People v. Ault* (2004) 33 Cal.4th 1250, 1262-1263.) When the trial court grants a motion for new trial, we review both the findings of error and of prejudice for abuse of discretion. (*Id.* at p. 1265 [prejudice finding]; *People v. Callahan* (2004) 124 Cal.App.4th 198, 210-211 [review finding of error for abuse of discretion].)

The prosecution enjoys wide latitude to comment on the evidence presented at trial and to draw inferences from such evidence. (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) "We apply a 'reasonable likelihood' standard for reviewing prosecutorial remarks, inquiring whether there is a reasonable likelihood that the jurors misconstrued or misapplied the words in question." (*People v. Roybal* (1998) 19 Cal.4th 481, 514.)

The People correctly note that the United States Supreme Court has declared that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (*Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 647 [40 L.Ed.2d 431, 439].) We also agree with the People that a claim of prosecutorial misconduct requires the consideration of a prosecutor's statements in their proper context (*People v. Cunningham* (2001) 25 Cal.4th 926, 1025-1026; *People v. Hill* (1967) 66 Cal.2d 536, 560, 562 ["A resolution of the issue presented requires that we consider the remarks claimed to be improper in the context in which made"; "a

9

prosecutor is justified in making comments in rebuttal, perhaps otherwise improper, which are fairly responsive to argument of defense counsel and are based on the record"].)  However, we cannot agree with the People's conclusion that application of those principles here supports a finding of abuse of discretion in this case.

The People's argument overlooks the deference owed to the trial court when applying the abuse of discretion standard.  In the context of reviewing a motion for new trial, the abuse of discretion standard " 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].'  [Citation.]  The appellant has the burden to demonstrate that the trial court's decision was 'irrational or arbitrary,' or that it was not ' "grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." [Citation.]'  [Citation.]  [¶]  'Where the motion is made on a proper statutory ground, and the record contains some showing in support of it, the judge's discretion in granting is almost invariably upheld; i.e., the appellate court gives the order all of the presumptions in favor of any appealable judgment.' "  (*People v. Andrade* (2000) 79 Cal.App.4th 651, 659.)

A prosecutor is not allowed to misstate the law to the jury.  (*People v. Bell* (1989) 49 Cal.3d 502, 538.)  The trial court's finding that the jury applied the prosecutor's remarks to make the legally erroneous conclusion that Mitchell could not be subject to liability for criminal evasion was neither irrational nor arbitrary.  While a less damaging inference—that the statement reflected an exercise of prosecutorial discretion not to charge Mitchell with felony evasion—is also possible, a trial court is not required to make the less damaging inference regarding a prosecutor's remarks.  This is particularly true where, as here, the less damaging inference requires the specialized legal knowledge necessary to distinguish between potential criminal liability and the prosecutor's discretion not to charge.  Since a jury should not be expected to make such a fine legal

10

distinction, the trial court's more damaging interpretation of the prosecutor's remarks is not an abuse of discretion.**5**

We also find no abuse of discretion regarding the trial court's findings on the effect of the misconduct.  We defer to the trial court's characterization of the trial as a close case and agree with its finding that the credibility of the prosecution and defense witnesses was the central issue.  Mitchell was the main defense witness, and her taking the stand and admitting to felony evasion without the benefit of an immunity agreement was a powerful argument in support of her credibility.  In this context, it was neither irrational nor arbitrary for the trial court to conclude that the improper argument regarding her liability for felony evasion deprived defendant of a fair trial.

## DISPOSITION

The judgment is affirmed.

BUTZ_____, J.

We concur:

BLEASE_____, Acting P. J.

HOCH_____, J.

---

**5** We agree with the People that it is not proper to consider the jurors' responses to the trial court's questions regarding the impact of the prosecutor's arguments about Mitchell's testimony, because evidence of a juror's mental processes is inadmissible. (Evid. Code, § 1150, subd. (a).)  However, any claim of error regarding the trial court's improper use of such evidence in granting the new trial motion is forfeited by the People's failure to object at trial (Evid. Code, § 353, subd. (a)) or to argue on appeal that the use of this evidence in support of its granting the new trial motion was an abuse of discretion.  (*Christoff v. Union Pacific Railroad Co*. (2005) 134 Cal.App.4th 118, 125 ["appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)